[Cite as *State v. Oliver*, 2021-Ohio-4153.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 29535 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| ANTHONY R. OLIVER | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 18 11 4023 |

DECISION AND JOURNAL ENTRY

Dated: November 24, 2021

CARR, Presiding Judge.

{¶1} Defendant-Appellant Anthony Oliver appeals the judgment of the Summit County Court of Common Pleas. This Court affirms in part, and reverses in part.

I.

{¶2} During the evening of September 29, 2018, the victim went with Alysha and Nova to Heather's home, where there was a small party. The victim had only met Heather once before and had never been to her house. There was a lot of drinking and dancing at the party. At one point in the evening, Alysha was going to drive the victim and Heather to a gas station to get more alcohol. Oliver wanted to go as well but Alysha told him that he could not go. Oliver got angry, pulled a gun out of his pants and threatened to shoot up the car. Alysha then indicated that no one was going. Later, Alysha and the victim went to the gas station.

{¶3} In the early morning hours, after most of the other people at the party had gone upstairs, the victim and Oliver were talking in the kitchen. The victim alleged that Oliver

grabbed her hand and pulled her into a nearby small bathroom. She maintained that Oliver shut and locked the door and stood in front of it. Oliver began kissing and sucking on the victim's neck, which resulted in a large bruise. The victim told him to stop but Oliver just laughed. Oliver then sexually assaulted the victim. Afterward, Oliver took the gun out of his pants, put it to her head, and told her that, "If [she had] anything, [he was] going to kill [her]."

{¶4} In December 2018, an indictment was filed charging Oliver with two counts of rape in violation of R.C. 2907.02(A)(2), two counts of rape in violation of R.C. 2907.02(A)(1)(c), one count of kidnapping, two counts of abduction, one count of having weapons while under disability, one count of carrying a concealed weapon, and one count of aggravated menacing. Firearms specifications accompanied the first seven counts. The matter proceeded to a jury trial. With respect to the four rape counts, the jury was additionally instructed as to sexual battery: two counts involving R.C. 2907.03(A)(1) and two counts involving R.C. 2907.03(A)(2). The jury found Oliver not guilty of the first two rape counts and could not reach a unanimous verdict on the last two rape counts. In addition, the jury found Oliver not guilty as to sexual battery with respect to count two and as to one of the abduction counts. As to counts one, three, and four, the jury found Oliver guilty of sexual battery. The jury found Oliver guilty of the remaining offenses. The trial court sentenced Oliver to an aggregate term of nine years and six months.

{¶5} Oliver has appealed, raising five assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

THE COURT ERRED IN GIVING INSTRUCTION OF SEXUAL BATTERY
AS A LESSER INCLUDED OFFENSE TO RAPE UNDER THIS RECORD AS
THERE IS NO EVIDENCE OF COERCION OR THAT [THE VICTIM] WAS

SUBSTANTIALLY IMPAIRED AND THAT ANTHONY [OLIVER] KNEW [THE VICTIM] WAS SUBSTANTIALLY IMPAIRED[.]

{¶6}   Oliver argues in his first assignment of error that the trial court erred in giving instructions on sexual battery as there was no evidence of coercion, substantial impairment, or that Oliver knew the victim was substantially impaired.

{¶7}   However, Oliver has not demonstrated he objected to the trial court giving instructions on sexual battery.  The following discussion took place at trial:

> [The Trial Court]:  You want to talk about the lesser included that you requested, Mr. [Prosecutor], and also that [Defense Counsel] requested?  Let's talk about the lesser included on the record.  Mr. [Prosecutor], go first.

> [Prosecutor]:  Thank you, Your Honor.  May it please the Court.  The State is requesting that to all four rape counts that there be a lesser included of sexual battery.

> Your Honor, the State has emailed case law on this matter for Counts 1 and 2, which are the forced rape charge.  I would cite to *[S]tate v. Ortiz * * ** [holding that a] conviction of sexual battery is a lesser included offense of rape as supported by evidence that defendant could have subjectively believed victim consented to sex even though the facts and circumstances indicated that she had not.  I cite to other cases that say the same thing.

> So that's – basically I'm paraphrasing the language of the case law, but I emailed your judicial attorney as well and cc'd [Defense Counsel] that for the forced rape allegation, if the jury was to find not guilty on any of the elements and could not find guilty on the forced rape counts either by vaginal penetration or anal penetration, that they could then move on to whether or not there was sexual battery by anal penetration or vaginal penetration.

> The elements are different.  It's the mental state element that goes from purposely to knowingly, from sexual – from rape to sexual battery.  The act goes from force to coercion.  So there is controlling case law to support that.

> Then with the intoxication is the rape by intoxication, so I believe that's Counts 3 and 4 where Count 3 would be vaginal rape, Count 4 would be anal rape.

> I sent another case to the judicial attorney and cc'd [Defense Counsel].  This is a Tenth District Case.  I did not see controlling case that supports this, but this cites to other cases where they had indicated that the sexual battery where there is impairment is also a lesser included of rape where there is impairment.

Again, my reading of the case law is that they would have to find not guilty of the impairment rape because – and from the *Stricker* decision, they indicated that basically the impairment element is sufficiently different. That's why they wouldn't be able to find guilty on the rape and also guilty on the sexual battery. They don't have identical elements.

So if they were to find not guilty on the rape, sexual battery, they could then consider whether or not it was sexual battery by impairment.

I discussed this matter with [Defense Counsel]. I believe that his opinion was that a lesser included instruction for sexual battery on the four rape counts was appropriate, but I'll defer to [Defense Counsel] if his position's changed.

[The Trial Court]: Anything you want to say as to that issue?

[Defense Counsel]: I think there is evidence obviously if they find there wasn't a rape there could be something else, and because of that, I'd ask the Court to instruct on misdemeanor sexual imposition, which is some sexual contact that does not rise to the level of battery, GSI, rape, and allows them another option if they don't think the evidence fits the current charges.

[The Trial Court]: The Court's view of this matter is that this is a case where one side is claiming rape, forcible rape, the other side is claiming consent. That the big factual dispute. And then the additional factual dispute is the level of intoxication or ability to consent of [the victim].

So the Court doesn't feel a sexual imposition instruction is appropriate, but I do feel the other lesser includeds are substantiated by some facts that could be read in different ways. So all or nothing. And that's kind of the way it's being argued. And a sexual imposition doesn't appear appropriate to the Court, so there we are.

[Defense Counsel]: Thank you, Your Honor.

**{¶8}** No objections were made during this discussion. In addition, Oliver did not object after the jury instructions were read to the jury.

**{¶9}** Crim.R. 30(A) states in part that, "[o]n appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury." However, "a party does not waive his or her objections to the court by failing to formally object, where the

record affirmatively shows that the trial court has been fully apprised of the correct law governing a material issue in dispute." *State v. Mack*, 82 Ohio St.3d 198, 199-200 (1998). A defendant can comply with Crim.R. 30(A) by apprising the trial judge of the law and defense counsel's requests. *Id.* at 200.

{¶10} Here, while Oliver requested the inclusion of an instruction on sexual imposition, Oliver has not challenged the trial court's ruling on that issue on appeal. Instead, Oliver challenges the trial court's decision to include instructions on sexual battery; an issue to which Oliver has not demonstrated he objected or otherwise challenged below. Because Oliver failed to demonstrate that he objected and has not argued plain error on appeal, we overrule his argument on that basis. *See State v. Keresztesi*, 9th Dist. Medina No. 2651-M, 1997 WL 772830, *9 (Dec. 3, 1997); *see also State v. Hill*, 9th Dist. Summit No. 26519, 2013-Ohio-4022, ¶ 18.

{¶11} Oliver's first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT [THE VICTIM] WAS SUBSTANTIALLY IMPAIRED AND FAILED TO PROVE CARRYING A CONCEALED WEAPON AND THUS THERE IS INSUFFICIENT EVIDENCE FOR THE JURY VERDICT AND THE COURT ERRED IN DENYING THE DEFENDANT'S RULE 29 MOTION.

{¶12} Oliver argues in his second assignment of error that there was insufficient evidence to support two of the sexual battery charges and the charge for carrying a concealed weapon. Specifically, Oliver maintains that there was insufficient evidence of substantial impairment, that Oliver knew the victim's ability to appraise the nature of or control her conduct was substantially impaired, that the gun was concealed, or that the gun was loaded or there was ammunition ready at hand. While Oliver mentions Crim.R. 29, his argument only sets forth the

sufficiency standard. Accordingly, we will review whether there was sufficient evidence to support the verdicts at issue.

{¶13} In addition, Oliver asserts that the jury verdict form for the charge of carrying a concealed weapon fails to comply with R.C. 2945.75 and *State v. Pelfrey*, 112 Ohio St.3d 422, 2007-Ohio-256, and, thus, he could only have been convicted of a first-degree misdemeanor. He further contends that the jury was incompletely instructed on that charge. As Oliver's verdict form argument is determinative, it will be addressed first.

## Jury Verdict Form

{¶14} "The sufficiency of a jury verdict form to justify convicting a defendant of a greater degree of a criminal offense presents a question of law, which this Court reviews de novo." *State v. Brown*, 9th Dist. Summit No. 25206, 2010-Ohio-4863, ¶ 15.

{¶15} R.C. 2945.75(A)(2) provides that, "[w]hen the presence of one or more additional elements makes an offense one of more serious degree[,] * * * [a] guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged." Accordingly, "[p]ursuant to the clear language of R.C. 2945.75, a verdict form signed by a jury must include either the degree of the offense of which the defendant is convicted or a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of a criminal offense." *Pelfrey* at syllabus; *see also State v. McDonald*, 137 Ohio St.3d 517, 2013-Ohio-5042, ¶ 13 (reciting the language from *Pelfrey*). "*Pelfrey* makes clear that in cases involving offenses for which the addition of an element or elements can elevate the offense to a more serious degree, the verdict form itself is

the only relevant thing to consider in determining whether the dictates of R.C. 2945.75 have been followed." *McDonald* at ¶ 17.

{¶16} Oliver was charged with violating R.C. 2923.12(A)(2), (F)(1), as a felony of the fourth degree. The indictment includes language that "the weapon involved was a firearm that was either loaded or for which the offender had ammunition ready at hand."

{¶17} R.C. 2923.12(A)(2) provides that "[n]o person shall knowingly carry or have, concealed on the person's person or concealed ready at hand, * * * [a] handgun other than a dangerous ordnance[.]" R.C. 2923.12(F)(1) states:

> Whoever violates this section is guilty of carrying concealed weapons. Except as otherwise provided in this division or divisions (F)(2), (6), and (7) of this section, carrying concealed weapons in violation of division (A) of this section is a misdemeanor of the first degree. Except as otherwise provided in this division or divisions (F)(2), (6), and (7) of this section, if the offender previously has been convicted of a violation of this section or of any offense of violence, if the weapon involved is a firearm that is either loaded or for which the offender has ammunition ready at hand, or if the weapon involved is dangerous ordnance, carrying concealed weapons in violation of division (A) of this section is a felony of the fourth degree. Except as otherwise provided in divisions (F)(2) and (6) of this section, if the offense is committed aboard an aircraft, or with purpose to carry a concealed weapon aboard an aircraft, regardless of the weapon involved, carrying concealed weapons in violation of division (A) of this section is a felony of the third degree.

{¶18} This Court has previously concluded that *Pelfrey* applies in these circumstances. *See State v. Brown*, 9th Dist. Summit No. 25206, 2010-Ohio-4863, ¶ 14-18; *see also State v. Crawford*, 3d Dist. Allen No. 1-10-62, 2011-Ohio-3000, ¶ 5-6.

{¶19} The jury verdict form does not specify the degree of the offense, nor does it include any aggravating elements. Therefore, "the guilty verdict constitutes a finding of guilty of the least degree of the offense charged." R.C. 2945.75(A)(2). In this case, that would be a misdemeanor of the first degree. *See* R.C. 2923.12(F)(1). Oliver's second assignment of error is

sustained to the extent he challenges the sufficiency of the verdict form. The matter must be remanded to the trial court so that the trial court can enter judgment convicting Oliver of carrying a concealed weapon as a misdemeanor of the first degree. Given the foregoing, his argument concerning the related jury instruction has been rendered moot. *See* App.R. 12(A)(1)(c).

## Sufficiency

{¶20} When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trier of fact was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id*. at paragraph two of the syllabus. "Although we conduct de novo review when considering a sufficiency of the evidence challenge, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." (Internal quotations and citation omitted.) *State v. Piatt*, 9th Dist. Wayne No. 19AP0023, 2020-Ohio-1177, ¶ 8.

{¶21} Here, Oliver challenges his two convictions for sexual battery in violation of R.C. 2907.03(A)(2) and his conviction for carrying a concealed weapon in violation of R.C. 2923.12(A)(2)/(F)(1).

## Sexual Battery

{¶22} R.C. 2907.03(A)(2) provides that "[n]o person shall engage in sexual conduct with another, not the spouse of the offender, when * * * [t]he offender knows that the other

person's ability to appraise the nature of or control the other person's own conduct is substantially impaired."

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(B).

{¶23} As this Court noted in *State v. Hansing*, 9th Dist. Lorain No. 16CA011053, 2019-Ohio-739:

> The phrase substantially impaired * * * must be given the meaning generally understood in common usage. * * * [It] must be established by demonstrating a present reduction, diminution or decrease in the victim's ability, either to appraise the nature of his conduct or to control his conduct. This is distinguishable from a general deficit in ability to cope[.] Expert testimony is not required to establish substantial impairment, and the existence of a substantial impairment may be proven by the victim's testimony.

(Internal quotations and citations omitted.) *Hansing* at ¶ 13.

{¶24} "With respect to R.C. 2907.0[(2)](A)(1)(c), this Court has recognized that voluntary intoxication is a mental or physical condition that could cause substantial impairment. Nonetheless, this Court agrees that [e]very alcohol consumption does not lead to a substantial impairment." (Internal quotations and citations omitted.) *Id.* at ¶ 14. Depending on the circumstances, it can be even more challenging to determine whether the defendant knew, or should have known, that someone else was impaired as opposed to merely intoxicated. *See id.*

{¶25} In reviewing the evidence in a light most favorable to the State, we conclude that sufficient evidence was presented from which a jury could conclude beyond a reasonable doubt

that Oliver knew the victim's ability to appraise the nature of or control her conduct was substantially impaired. *See* R.C. 2907.03(A)(2).

{¶26} On September 29, 2018, the victim left her four children with their father, who was also living with them, and went with Alysha and Nova to Heather's house for a small party. The victim had only met Heather once before and had never been to her house. At the party, there was a lot of drinking and dancing.

{¶27} Oliver arrived at the party a couple hours after the victim. The victim did not know Oliver, but Oliver was close with Heather and Heather's boyfriend. Alysha and Heather testified that, at some point, while they were taking photos, Heather saw Oliver pull out a gun out of his pocket and she told him to take it out of her house. Oliver left but then came back. At some point later in the evening, Alysha was going to drive the victim and Heather to a gas station to get more alcohol. Oliver wanted to go with them, but Alysha would not let him. According to the victim, Oliver then pulled a gun out of his pants and threatened to shoot up the car. The victim testified she felt threatened by it. Alysha confirmed that Oliver had a gun but described that he only flashed it. While Heather confirmed that Oliver threatened to shoot up the car, she denied that Oliver flashed or waved a gun at them. Alysha then told everyone that no one was going to go. Later, she and Alysha went to the gas station. Alysha talked to Heather's boyfriend about it, and he indicated that Oliver was just kidding and that he would not shoot up the car.

{¶28} The victim admitted to drinking a lot of vodka and to being intoxicated. She estimated that she had 6 shots and some Mike's Hard Lemonade. She elaborated that she "had a lot. It was[ not] to the point where [she was] pass out drunk, but it was enough to make [her] feel decent." She denied having a high tolerance because she asserted that she did not drink that often. People at the party described the victim as shy and quiet but that after drinking she

became more social, outgoing, and loud. Heather indicated that the victim became a "party girl." Alysha testified that everyone drank a lot that night and the victim did not drink any more than anyone else, but that everyone was probably intoxicated. Alysha asserted that the victim did not seem any more drunk than anyone else. Heather testified that they had probably three bottles of liquor. Nova admitted to drinking a lot and said that the victim did as well.

{¶29} While the victim denied specifically dancing with Oliver, Heather testified that the victim was "twerking him; like grinding her butt on him." Heather also reported that the victim was also dancing with another guy there. Heather indicated that some of the women were flashing their breasts and Nova testified that she and Heather were doing body shots.

{¶30} During the early morning hours, Heather, Heather's boyfriend, Nova, and Alysha went upstairs. Alysha indicated that the victim seemed "drunk, but not drunk like very drunk or sloppy." Prior to going upstairs, Nova observed the victim and Oliver sitting in the kitchen. Nova stated that the victim was "[k]ind of[]" flirting with Oliver. When asked to explain, Nova indicated that the victim was "[j]ust like drunk[.]" Nova later described the victim as being very drunk. Alysha estimated they were upstairs for about 15 to 20 minutes.

{¶31} Oliver began talking to the victim and asked if she had a boyfriend. She indicated she did not.[1] Oliver then told the victim to, "Come here." The victim said, "No." Oliver then grabbed the victim's arm and pulled her into the nearby small bathroom. The victim testified that Oliver shut the door, locked it, and stood in front of it. However, Heather testified that the lock was broken. Oliver started kissing and sucking on the victim's neck, leaving a large bruise.

---

[1] At the time of the events, the victim testified that she and the children's father were not together, but she let him live with her. Other testimony indicated that the couple had a history of breaking up and getting back together. For ease of discussion, we will refer to the children's father as the victim's boyfriend.

The victim told Oliver to stop but he just laughed. Oliver turned the victim around, pulled down her pants and anally penetrated her with his penis. The victim told him to stop, that it hurt, but he just laughed. Oliver then penetrated the victim vaginally. The victim kept trying to push Oliver off, but he did not stop. When he was done, he pulled his pants up, took the gun out of his pants and pointed it at her head and told her that if she "got anything" he was "going to kill [her]." She did not see the gun during the assault.

{¶32} After Oliver left the bathroom, the victim testified that Nova, Alysha, and Heather came looking for her. Alysha testified that she called the victim, who told Alysha that she was in the bathroom. When Alysha went to the bathroom, Oliver was nearby in the kitchen. Heather testified that Oliver was drunk but not as drunk as the victim. Alysha indicated that the victim seemed scared and quiet. When she saw the victim, Alysha described the victim as looking out of it and as though she had been crying a little bit. Nova testified the victim was actually crying. Heather described the victim as looking drunk and that she was not crying. According to the victim, the women asked if the victim was alright, and she said she was. They did not believe her. Heather and Alysha testified that Heather asked the victim if the victim and Oliver had had sex and the victim said yes. When asked if he raped her, Heather and Alysha testified that the victim said no. In fact, Heather testified that she asked the victim multiple ways if Oliver assaulted her and each time the victim replied no. Even though the victim could still walk and talk, Heather was concerned about whether she was raped because the victim was "really drunk." The victim denied that Heather asked her those questions.

{¶33} Heather offered to let the victim go sleep in a bed upstairs since the victim was intoxicated but the victim did not want to do that. Alysha and Nova testified that the victim said she wanted to leave; nonetheless, the victim agreed to go upstairs. Heather took the victim

upstairs. Heather walked behind the victim "in case she would stumble." Alysha went in the room with the victim and the victim was crying and hyperventilating. Alysha testified that while they were alone, the victim told Alysha that Oliver raped her. Alysha then got Nova and brought Nova in the room and the victim told Nova what happened. Nova and Alysha then told Heather what happened. Heather maintained that, at that point, the victim was crying and saying her boyfriend was angry with her because she did not get home on time and that he lost his job. The victim told Heather she did not know what to do and that she was scared. Heather told her that if she was raped, she should go to the hospital. Heather went downstairs and told Oliver they were going to bed and Oliver ultimately left. Heather reported that Oliver was acting normally. The victim decided to go to the hospital. They all walked her out to her car because she was afraid of Oliver, and Alysha drove her to the hospital. The victim consented to having a rape kit collected and also talked to police.

{¶34} The victim's boyfriend contacted the victim several times during the evening and early morning inquiring when she would be home as he had to work in the morning. After the victim was at the hospital, she told her boyfriend what had happened. The victim acknowledged that coming home with the bruise on her neck would have been problematic for her relationship with her boyfriend. Alysha testified that she had a thought at some point that the victim might have made up the rape so the victim's boyfriend would not be angry with the victim for having sex with someone else. Nova described the victim's and the victim's boyfriend's relationship as "[s]ometimes" being violent.

{¶35} At the hospital, a sexual assault nurse examiner examined the victim and collected samples. The nurse described the victim as tearful, hyperventilating at times, and crying throughout the examination. The victim appeared traumatized and scared. The nurse noted a

small tear around the anus. The victim complained of an 8 out of 10 burning pain in that area. The injury was consistent with what the victim described happening, but the nurse acknowledged it could also be consistent with consensual acts. Photographs were taken and they included the neck bruise and injury to the victim's anus. The victim's medical records were also admitted as evidence. They note the victim as being "alert and oriented x3" at the time of the exam. However, one of the forms also includes the following prompt and answer: "Evidence of substance abuse that renders the patient incapable of cooperation with exam: Yes, 'quite a few I don't know' pt states she was drinking vodka[.]" Detective Pat McMillan of the Akron Police department testified that the victim did not appear to be under the influence when he talked to her later at the hospital.

{¶36} Samples from the rape kit were analyzed by the Ohio Bureau of Criminal Investigation. The DNA profiles obtained from the victim's vaginal and perianal samples were consistent with Oliver's DNA profile. The DNA profile found in the samples had an expected frequency of less than one in one trillion unrelated individuals.

{¶37} Detective McMillan investigated the victim's claims. The victim provided police with a nickname as that is all she knew him by. However, Alysha and Nova were able to provide police with Oliver's name. Police showed the victim a photograph of Oliver from a Facebook page and she identified Oliver as the person who sexually assaulted her. Detective McMillan then interviewed Oliver. During that first interview, Oliver denied having sex with anyone at the party and claimed to have been at the party for only 15 minutes. He claimed to not have seen any guns at the party. Oliver asserted that he was not intoxicated at the party. Oliver was asked to provide a DNA sample, but he refused. Police then obtained a warrant. Detective McMillan again interviewed Oliver when Detective McMillan collected Oliver's DNA sample. Detective

McMillan told Oliver that they were going to compare his DNA to the DNA from the rape kit. Detective McMillan asserted that Oliver looked surprised. He then admitted to having consensual sex with the victim. However, he still denied having a gun. Oliver also made a couple of jail calls to Heather. Heather told police he had a gun that night and Oliver seemed upset about that in the calls.

{¶38} Viewing the evidence in a light most favorable to the prosecution, we conclude that there was sufficient evidence to support the sexual battery verdicts at issue. While the witnesses did not provide detailed testimony on the victim's state at the time of the assault, there was evidence presented that would support that the victim's ability to appraise the nature of or control her own conduct was substantially impaired and Oliver would have had knowledge of that impairment. *See* R.C. 2907.03(A)(2).

{¶39} Multiple witnesses described the victim as being drunk and Nova at one point stated the victim was very drunk and Heather opined that the victim was really drunk. In fact, even though the victim could still walk and talk, Heather was concerned about whether the victim was raped citing the fact that the victim was "really drunk." Heather walked behind the victim going up the stairs in case the victim was to stumble. Heather was able to make these observations despite not knowing the victim well. In addition, the victim's medical records reflect that a health care provider also had concerns about the victim's state. As noted above, in response to the prompt, "Evidence of substance abuse that renders the patient incapable of cooperation with exam[,]" the form reads: "Yes, 'quite a few I don't know' pt states she was drinking vodka[.]"

{¶40} Thus, there was evidence not only of substantial impairment, but also that people around the victim, including those who did not know her well, knew that the victim's ability to

appraise the nature of or control her own conduct was substantially impaired. R.C. 2907.03(A)(2).

{¶41} Oliver has not demonstrated that the guilty verdicts on the two counts of sexual battery at issue are based upon insufficient evidence.

### Carrying a Concealed Weapon

{¶42} Oliver additionally asserts that there was insufficient evidence that the gun was concealed or that it was loaded or that Oliver had ammunition ready at hand. The element of the gun being loaded or there being ammunition ready at hand is an aggravating element which would increase the degree of the offense. *See Brown*, 2010-Ohio-4863, ¶ 14-18; R.C. 2923.12(F)(1). Because we have already concluded above that jury verdict form was insufficient to convict Oliver of the felony level offense, his sufficiency argument pertaining to the aggravating element is moot and will not be addressed. *See* App.R. 12(A)(1)(c).

{¶43} R.C. 2923.12(A)(2) states that "[n]o person shall knowingly carry or have, concealed on the person's person or concealed ready at hand, * * * [a] handgun other than a dangerous ordnance[.]"

{¶44} Here, there was undoubtedly sufficient evidence that Oliver had a concealed weapon. This Court has concluded that "it is sufficient to support a conviction of carrying a concealed weapon to prove only that ordinary observation would give no notice of [the weapon's] presence." *State v. Coker*, 15 Ohio App.3d 97, 98 (9th Dist.1984); *see also State v. Varner*, 9th Dist. Summit No. 23941, 2008-Ohio-2667, ¶ 20. The victim testified that after Oliver assaulted her, he pulled his pants up, took the gun out of his pants and pointed it at her head and told her that if she "got anything" he was "going to kill [her]." The victim testified that she did not see the gun during the assault. In addition, the victim testified that when she,

Heather, and Alysha were going to go get more alcohol, Oliver tried to go with them, and Alysha told him he could not go. Oliver became angry, pulled a gun out of his pants and threatened to shoot up the car. The victim averred that she felt threatened by this action.

{¶45} Oliver's second assignment of error is overruled in part and sustained in part.

## ASSIGNMENT OF ERROR III

THE JURY VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]

{¶46} Oliver argues in his third assignment of error that the verdicts for sexual battery based upon substantial impairment, carrying a concealed weapon, and kidnapping are against the manifest weight of the evidence.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶47} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340. "[W]e are mindful that the jury is free to believe all, part, or none of the testimony of each witness." (Internal quotations and citations omitted.) *State v. Gannon*, 9th Dist. Medina No. 19CA0053-M, 2020-Ohio-3075, ¶ 20. "This

Court will not overturn a conviction on a manifest weight challenge only because the [trier of fact] found the testimony of certain witnesses to be credible." *Id*.

{¶48} With respect to the sexual battery counts, Oliver essentially raises the same arguments he raised in his challenge to the sufficiency of the evidence. As discussed above, we concluded there was sufficient evidence to support the guilty verdicts and Oliver's manifest weight arguments do not alter this Court's prior conclusion. As to Oliver's challenge to the carrying a concealed weapon count, Oliver briefly reiterates his prior argument that there was no evidence that the weapon was concealed, or loaded, or that there was ammunition ready at hand. As to the evidence supporting that the weapon was concealed, it was detailed above, and Oliver's manifest weight argument does not change this Court's determination. With respect to the latter two points, those contentions were rendered moot by this Court's resolution of Oliver's jury verdict form argument.

{¶49} To the extent that Oliver has pointed out that the victim had a motive to lie about the assault, we note that the jury was presented with that evidence but nonetheless found Oliver guilty. It was the defense's theory that the victim had consensual sex with Oliver and that she fabricated the allegations so that the victim's boyfriend would not be angry with her when he saw the large bruise on her neck. Nonetheless, we cannot say that the jury was unreasonable in its resolutions of witness credibility and conflicts in the evidence. As mentioned above, "[t]his Court will not overturn a conviction on a manifest weight challenge only because the [trier of fact] found the testimony of certain witnesses to be credible." *Gannon* at ¶ 20.

{¶50} Additionally, Oliver asserts that his conviction for kidnapping is against the manifest weight of the evidence. Specifically, Oliver alleges that there was no evidence that the victim was restrained. Oliver was found guilty of violating R.C. 2905.01(A)(4). R.C.

2905.01(A)(4) states that "[n]o person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person * * * [t]o engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will[.]" Accordingly, the State only had to demonstrate either that the victim was removed from the place where she was found *or* that the her liberty was restrained by Oliver. Oliver has not even argued that the weight of the evidence did not support that the victim was removed from the place where she was found. Thus, Oliver has not demonstrated that his conviction for kidnapping is against the manifest weight of the evidence.

{¶51} Oliver's third assignment of error is overruled.

### ASSIGNMENT OF ERROR IV

ANTHONY OLIVER WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE 1, SECTION 10, OF THE OHIO CONSTITUTION[.]

{¶52} Oliver asserts in his fourth assignment of error that he received ineffective assistance of counsel.

{¶53} In order to prevail on a claim of ineffective assistance of counsel, Oliver must show that "counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance." *State v. Reynolds*, 80 Ohio St.3d 670, 674 (1998), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland* at 686. Thus, a two-prong test is necessary to examine such claims. First, Oliver must show that counsel's performance was objectively deficient by producing evidence that counsel acted unreasonably. *State v. Keith*, 79 Ohio St.3d 514, 534 (1997), citing *Strickland*

at 687. Second, Oliver must demonstrate that but for counsel's errors, there is a reasonable probability that the results of the trial would have been different. *Keith* at 534. This Court need not address both prongs of the *Strickland* test if the appellant fails to satisfy either prong. *State v. Ray*, 9th Dist. Summit No. 22459, 2005-Ohio-4941, ¶ 10.

{¶54} First, Oliver claims that trial counsel's failure to offer mitigation to reduce the offense level of the kidnapping charge amounted to ineffective assistance of counsel. Pursuant to R.C. 2905.01(C)(1), "if an offender who violates division (A)(1) to (5), (B)(1), or (B)(2) of this section releases the victim in a safe place unharmed, kidnapping is a felony of the second degree[,]" as opposed to a felony of the first degree. Harm under the statute refers to both physical and psychological harm. *State v. Mohamed*, 151 Ohio St.3d 320, 2017-Ohio-7468, ¶ 1. "[T]he defendant bears the burden of establishing the existence of a mitigating factor which might reduce the offense level." *State v. Suggs*, 9th Dist. Summit Nos. 27812, 27865, 27866, 2016-Ohio-5692, ¶ 6.

{¶55} Here, Oliver has not explained what evidence or argument trial counsel should have made to demonstrate that the victim was released in a safe place unharmed. There was evidence that Oliver caused the victim to have a large bruise on her neck and a tear in her anus. Oliver has not demonstrated that trial counsel was ineffective in failing to argue that the victim was released in a safe place unharmed.

{¶56} Next, Oliver maintains that trial counsel was ineffective in admitting that Oliver had a gun and in "failing to argue loaded weapon or ammunition at hand, or concealment * * *." With respect to trial counsel admitting that Oliver had a gun, we conclude that it could have been a debatable trial tactic. "Debatable trial tactics do not give rise to a claim of ineffective assistance of counsel." *State v. Patton*, 9th Dist. Wayne No. 19AP0028, 2021-Ohio-1230, ¶ 10.

Here, Oliver's defense witness, Heather, also testified that Oliver had a gun and there was discussion of the same in the phone calls from the jail. Given those circumstances, Oliver has not demonstrated it would not have been unreasonable for trial counsel to admit that which Oliver's witness was going to testify to in order not to diminish her credibility. Oliver has not demonstrated that trial counsel was ineffective in referencing that Oliver had a gun. To the extent that Oliver states that trial court counsel was ineffective in "failing to argue loaded weapon or ammunition at hand, or concealment[,]" this argument will be addressed below.

{¶57} Finally, Oliver maintains that trial counsel was ineffective in failing to develop a Crim.R. 29 argument as to all of the counts. He asserts that trial counsel failed to "argue the gun issues and the failure of a loaded gun or ammunition." In addition, Oliver argues that trial counsel failed to "argue the rape issues failing to raise the issue of lack of evidence pertaining to 'substantial impairment.'" Oliver also argues that the same should have been addressed in closing argument. Oliver has not articulated what precisely trial counsel should have pointed to in the record to improve the Crim.R. 29 argument. Nor has he developed an argument explaining how the alleged errors were prejudicial. We discussed above how sufficient evidence was presented to support the guilty verdicts concerning the sexual battery charges based upon substantial impairment and the essential elements of the carrying a concealed weapon charge. "[A] Crim.R. 29 motion is not necessary to preserve the issue of sufficiency for appeal." *State v. Consilio*, 9th Dist. Summit No. 28409, 2017-Ohio-7913, ¶ 21. While the review of a ruling on a Crim.R. 29 motion and a review of the sufficiency of the evidence are distinct, Oliver has not explained how the distinction would matter under the facts of this case. Given the foregoing, and the lack of developed argument on appeal, we cannot say that Oliver has demonstrated that trial counsel was ineffective in the manner in which he raised a Crim.R. 29 motion. Moreover, Oliver

has not explained how any omission from trial counsel's closing argument impacted the verdicts in the case. Further, to the extent that Oliver again raises arguments related to whether the weapon was loaded or there was ammunition ready at hand in the context of ineffective assistance of counsel, they have been rendered moot as previously discussed.

{¶58} Oliver has not demonstrated that trial counsel was ineffective. Oliver's fourth assignment of error is overruled.

### ASSIGNMENT OF ERROR V

IT WAS PLAIN ERROR FOR THE COURT TO INSTRUCT THAT "SIGNIFICANTLY WEAKENED" IS AN ELEMENT OF SEXUAL BATTERY.

{¶59} Oliver argues in his fifth assignment of error that the trial court committed plain error in instructing the jury that significantly weakened is an element of sexual battery. Oliver acknowledges that he failed to object to the instruction.

{¶60} "Under Crim.R. 30(A), '[o]n appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection.' When a defendant fails to object to the jury instructions, []he waives all but plain error." *State v. Owens*, 162 Ohio St.3d 596, 2020-Ohio-4616, ¶ 7.

{¶61} Crim.R. 52 provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "To establish plain error, one must show (1) an error occurred, i.e., a deviation from a legal rule, (2) the error is plain, i.e., an obvious defect in the proceedings, and (3) the error affected a substantial right, i.e., affected the outcome of the proceedings." *State v. Berila*, 9th Dist. Medina No. 19CA0007-M, 2020-Ohio-3523, ¶ 43, quoting *State v. Grant*, 9th Dist. Summit No. 29259, 2019-Ohio-3561, ¶ 5. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under

exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

**{¶62}** We note that while Oliver has stated that the error amounts to plain error, he has not explained how the error meets the standard set forth above. *See* App.R. 16(A)(7).

**{¶63}** As to the third and fourth counts, the trial court instructed the jury, in relevant part, that, "the defendant knew that [the victim's] ability to appraise the nature of or control her own conduct was substantially impaired or significantly weakened." On appeal, Oliver argues that it was improper to include the phrase "significantly weakened" as that is not part of the statute. He is correct that "significantly weakened" is not found in R.C. 2907.03(A)(2). However, Oliver has failed to demonstrate that the inclusion of that language was reversible error, let alone plain error. While the trial court did not define significantly weakened, it defined substantially impaired as "a present reduction, diminution or decrease in the victim's ability either to appraise the nature of her conduct or to control her conduct." This comports with the definition this Court and the Supreme Court have used. *See Hansing*, 2019-Ohio-739, at ¶ 13. Another court has determined that a "trial court's definition of 'substantially impaired' in its instruction as a 'significantly weakened' ability to resist or consent clearly falls within the parameters of the definition as provided above." *State v. Kebe*, 8th Dist. Cuyahoga No. 73398, 1998 WL 787393, * 4 (Nov. 12, 1998). Thus, at least one court has found substantially impaired to be comparable to significantly weakened.

**{¶64}** Oliver has not demonstrated that the trial court committed plain error in instructing the jury. Oliver's fifth assignment of error is overruled.

III.

{¶65} Oliver's second assignment of error is sustained in part and overruled in part. The trial court is ordered to enter judgment finding Oliver guilty of carrying a concealed weapon as a first-degree misdemeanor. Oliver's other assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part, and the matter is remanded for proceedings consistent with this decision.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

DONNA J. CARR
FOR THE COURT

TEODOSIO, J.
SUTTON, J.
<u>CONCUR.</u>


<u>APPEARANCES:</u>

RICHARD P. KUTUCHIEF, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.