[Cite as *State v. Mork*, 2024-Ohio-1033.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| STATE OF OHIO | | C.A. No.     30605 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| ROBERT MORK | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No.     CR 21 03 0964 |

DECISION AND JOURNAL ENTRY

Dated: March 20, 2024

HENSAL, Judge.

**{¶1}** Robert Mork appeals his conviction for sexual battery by the Summit County Court of Common Pleas. For the following reasons, this Court affirms.

I.

**{¶2}** According to A.M., when she was sixteen, Mr. Mork contacted her one morning to ask her to come over to do some yard work for him. The Morks lived only two houses over from A.M. and had children around the same age as A.M.'s younger brother, so the two families had become close over the years. A.M. testified that it was normal for her to go over to the Mork residence and do tasks for them. Although it was a weekday, A.M. was attending an online high school, so her day was flexible.

**{¶3}** Although the Morks lived nearby, A.M. drove to the house because she was feeling lazy. When she arrived, Mr. Mork invited her in, and they sat talking for 15 to 20 minutes. Mr. Mork then offered her hard seltzer beverages and, subsequently, a cup of liquor, which she

accepted. After a little while, A.M. sent a text message to one of her work colleagues, reporting that she was drunk.

{¶4} According to A.M., when she got up, Mr. Mork began touching her, including on her chest and buttocks. He proceeded to pull off her pants and underwear and penetrated her mouth, vagina, and anus with his penis. Because of her smaller size and intoxicated state, A.M. believed resisting would be futile. When A.M.'s father called her cell phone, however, Mr. Mork stopped. He drove A.M. home so she could take measurements that her father requested but ended up taking them for her because of her condition. A.M., meanwhile, texted her coworker again and asked him to pick her up. When the coworker arrived, he could tell A.M. was drunk from her gait as she walked to his car. After telling him what had happened, he took her back to his apartment, where his girlfriend and friends took care of her. They eventually drove A.M. to the emergency room to be evaluated for sexual assault. DNA evidence collected during the examination was consistent with Mr. Mork's DNA.

{¶5} The Grand Jury indicted Mr. Mork on one count of sexual battery under Revised Code Section 2907.03(A)(2). A jury found him guilty of the offense, and the trial court sentenced him to four years imprisonment. Mr. Mork has appealed, assigning three errors.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED AS A MATTER OF LAW BECAUSE THE STATE
FAILED TO ESTABLISH ON THE RECORD SUFFICIENT EVIDENCE TO
SUPPORT THE CHARGES LEVIED AGAINST MR. MORK.

{¶6} In his first assignment of error, Mr. Mork argues that there is insufficient evidence to support his conviction. Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying

out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶7}   Section 2907.03(A)(2) provides that "[n]o person shall engage in sexual conduct with another, not the spouse of the offender, [if] * * * [t]he offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired."  "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature.  A person has knowledge of circumstances when the person is aware that such circumstances probably exist"  R.C. 2901.22(B).  "[If] knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact." *Id.*

{¶8}   Because the term "substantially impaired" is not defined by statute, the Ohio Supreme Court has given it "the meaning generally understood in common usage." *State v. Zeh*, 31 Ohio St.3d 99, 103 (1987).  "[S]ubstantial impairment must be established by demonstrating a present reduction, diminution or decrease in the victim's ability, either to appraise the nature of [her] conduct or to control [her] conduct." *Id.* at 103-104.  "This is distinguishable from a general deficit in ability to cope, which condition might be inferred from or evidenced by a general intelligence or I.Q. report." *Id.* at 104.  "Expert testimony is not required to establish substantial

impairment, and the existence of a substantial impairment may be proven by the victim's testimony." *State v. Carnegie*, 9th Dist. Summit No. 29844, 2021-Ohio-4597, ¶ 15.

{¶9} "[V]oluntary intoxication is recognized as 'a mental or physical condition that could cause substantial impairment.'" *Id.*, quoting *State v. Hansing*, 9th Dist. Lorain No. 16CA011053, 2019-Ohio-739, ¶ 14. Every alcohol consumption, however, "does not lead to a substantial impairment." *State v. Oliver*, 9th Dist. Summit No. 29535, 2021-Ohio-4153, ¶ 24, quoting *Hansing* at ¶ 24. "Depending on the circumstances, it can be even more challenging to determine whether the defendant knew, or should have known, that someone else was impaired as opposed to merely intoxicated." *Id.*

{¶10} According to A.M., Mr. Mork gave her hard seltzer beverages followed by a liquor that she thought was rum. The glass with the liquor was bigger than a shot glass and was filled very high. Mr. Mork told her the liquor was so strong that it had knocked her father out when he drank it. A.M. had never been drunk before, but as she drank the beverages, she began to feel like she was not herself anymore. Although she could move, she felt immobilized and, overall, not right. Her mind was relaxed but spinning a little. This was around the time when she texted her coworker that she was drunk. She knows she had a conversation with Mr. Mork but could not remember what it was about. A.M. also testified that, after her father called, Mr. Mork drove her back to her house because he thought she was too drunk to drive. He also took the measurements her father had asked for because she immediately went to the bathroom to throw up when they got to the house.

{¶11} A.M.'s coworker testified that he did not want to pick A.M. up, but eventually agreed because he thought there might be something wrong. When A.M. came out of her house, she looked disheveled. Her hair was messy, her clothes did not match, and, overall, it looked like

she had not taken care of herself. Although she was not falling over herself as she walked to the car, she was wobbly, and he could tell she was drunk. When she got in the car, she just sat, staring at the front console. Once he pulled out of the driveway, however, she completely broke down, yelling, wailing, and crying.

{¶12} Upon review of the record, we conclude there is sufficient evidence from which the jury could infer Mr. Mork knew that A.M. was substantially impaired at the time of the sexual activity. In fact, it appears to have been Mr. Mork's intention. He gave a 5'4" 16-year-old girl multiple alcohol drinks over a short period of time, including a hard liquor that he knew had caused a grown adult to pass out. Immediately after the sexual activity, he did not allow A.M. to drive her vehicle a mere two houses over because of her level of intoxication. He also performed the task A.M.'s father requested because she was incapable of doing it herself. Although A.M. did not pass out from the drinks, she began vomiting as soon as she arrived home and continued having spells of vomiting after she was picked up by her coworker. All these circumstances support a finding that A.M. was substantially impaired "as opposed to merely intoxicated." *Oliver* at ¶ 24. Mr. Mork's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

MR. MORK'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE CONSTITUTION.

{¶13} Mr. Mork's second assignment of error is that his conviction was against the manifest weight of the evidence. Although Mr. Mork's brief includes the standard for a manifest-weight challenge, it does not develop an argument for why his conviction is against the manifest weight of the evidence. It is not clear whether Mr. Mork decided to abandon this assignment of error, whether he filed the wrong version of his brief, whether he ran out of time to complete his

brief, or whether he simply forgot to develop an argument. Regardless, under Appellate Rule 16(A)(7), a brief must contain "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." Mr. Mork's brief does not comply with that rule. "[If] an appellant fails to develop an argument in support of his assignment of error, this Court will not create one for him." *State v. Franks*, 9th Dist. Summit No. 28533, 2017-Ohio-7045, ¶ 16. Mr. Mork's second assignment of error is overruled.

ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED WHEN AND PREJUDICED MR. MORK'S RIGHT TO A FAIR TRIAL BY FAILURE TO DECLARE A MISTRIAL.

**{¶14}** Mr. Mork's third assignment of error is that the trial court incorrectly failed to declare a mistrial. Similar to his second assignment of error, Mr. Mork's brief includes the standard for when a trial court should declare a mistrial and this Court's standard of review on appeal. It also includes an explanation that multiple errors might have the cumulative effect of depriving a defendant of a fair trial even if none of the errors, by itself, meets that standard. What Mr. Mork's brief fails to include, however, is any argument concerning his case. App.R. 16(A)(7). Mr. Mork's brief does not even identify any place in the record where the trial court should have declared a mistrial. As previously noted, this Court will not create arguments to support Mr. Mork's assignments of error. *Franks* at ¶ 16. Mr. Mork's third assignment of error is overruled.

III.

**{¶15}** Mr. Mork's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

CARR, P. J.
FLAGG LANZINGER, J.
CONCUR.

APPEARANCES:

WESLEY A. JOHNSTON, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.