[Cite as *State v. Dardie*, 2023-Ohio-1656.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

    v.

CARL STANLEY DARDIE

    Appellant

C.A. No. 30168

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No. CR 2021 04 1524

DECISION AND JOURNAL ENTRY

Dated: May 17, 2023

FLAGG LANZINGER, Judge.

{¶1}    Carl Stanley Dardie appeals his conviction for failure to comply with an order or signal of a police officer from the Summit County Court of Common Pleas. For the following reasons, this Court affirms in part, reverses in part, and remands the matter for further proceedings consistent with this decision.

I.

{¶2}    In April 2021, a grand jury indicted Mr. Dardie on one count of failure to comply with an order or signal of a police officer in violation of R.C. 2921.331(B) and R.C. 2921.331(C)(5)(a)(ii), a third-degree felony, and one count of receiving stolen property in violation of R.C. 2913.51(A) and R.C. 2913.51(C), a fourth-degree felony. The matter proceeded to a jury trial, and the jury ultimately found Mr. Dardie guilty of failure to comply, but not guilty of receiving stolen property. Because Mr. Dardie's appeal relates to his conviction for failure to comply only, this Court will limit its recitation of the facts accordingly.

**{¶3}** Relevant to this appeal, prior to the start of trial, the trial court informed Mr. Dardie of his right to appear in civilian clothes at trial. The trial court allowed Mr. Dardie to return to the jail to change from his orange jumpsuit into civilian clothes but, upon arriving at the jail, Mr. Dardie refused to change into civilian clothes. Mr. Dardie returned to the courtroom in an orange jumpsuit, which he remained dressed in throughout trial.

**{¶4}** Additionally, outside the presence of the jury, the Sheriff's Office advised the trial court that it had safety concerns with Mr. Dardie, and that it was in their best interest to keep him secured with handcuffs and leg shackles throughout trial. The trial court indicated that it did not get involved with security issues, and that it would defer to the Sheriff's Office in that regard. Mr. Dardie, therefore, appeared at trial in handcuffs and leg shackles. Prior to voir dire, the trial court informed the prospective jurors that Mr. Dardie would be appearing in an orange jumpsuit, as well as in handcuffs and leg shackles, and instructed the prospective jurors not to infer anything from Mr. Dardie's attire, or to hold it against him for any purpose.

**{¶5}** According to Officer Thomas Shoemaker's testimony at trial, he and his partner, Officer Bower, received a "be-on-the-lookout" for a stolen vehicle shortly after midnight on April 19, 2021. The officers located the vehicle at a stop light, pulled up behind it, and activated their emergency lights. The officers attempted to conduct a felony stop (i.e., order the driver to turn off the vehicle, throw the keys out, and exit the vehicle). The driver did not comply, and instead fled from the officers.

**{¶6}** The officers then activated the police cruiser's sirens and pursued the vehicle through a residential area for about one mile, which lasted about 30 seconds. According to Officer Shoemaker, the officers were traveling at least 50 m.p.h., although he admitted that he did not look at the cruiser's speedometer during the pursuit. The officers "very briefly" lost sight of the vehicle

after it crested a hill. Officer Shoemaker testified that as soon as the police cruiser also crested the hill, he observed that the vehicle had hit a telephone pole, and that the driver was attempting to flee on foot. Shortly thereafter, the driver "gave up" and laid down on the ground. Officer Shoemaker and Officer Bower arrested the driver, whom they later identified as Mr. Dardie.

{¶7} The State asked Officer Shoemaker whether there was a risk involved in traveling at a high rate of speed in a residential area, to which Officer Shoemaker responded: "Absolutely, yes." Officer Shoemaker explained that, during a vehicle pursuit, officers slow down at intersections, and keep an eye out for other drivers or pedestrians that might not be paying attention.

{¶8} During the course of testifying as to how the officers identified Mr. Dardie, who originally told the officers that his first name was Anthony, Officer Shoemaker testified that another officer indicated that he recognized Mr. Dardie "from the homepage[,]" meaning the Akron Police Department's intranet homepage. Officer Shoemaker explained that the homepage contains pictures of "people who are wanted in Akron with warrants * * *." Defense counsel objected, and the trial court held a sidebar.

{¶9} During the sidebar, defense counsel moved for a mistrial based upon the State's reference to a warrant being out for Mr. Dardie's arrest. The State acknowledged that the testimony was potentially prejudicial to Mr. Dardie, and requested that the trial court give a curative instruction. The trial court denied defense counsel's motion for a mistrial, and issued the following curative instruction to the jury:

> [T]he Court is going to * * * strike the last statement of the officer regarding the fact that the Defendant, quote, had a warrant out on him.
>
> I'm telling you do not consider it for any purpose whatsoever; number one, it may not be true. It may not be true.

Also, if there was a warrant, it could be for failure to pay courts costs. In any event, you are not to consider that in any way in rendering a verdict in this case.

And you must decide this case only on the evidence. I am instructing you to disregard that testimony as though you never heard it and do not consider it for any purpose.

The State then continued with its direct examination of Officer Shoemaker.

{¶10} During cross-examination, Officer Shoemaker testified as to the evaluation officers undertake when deciding to pursue a fleeing vehicle, including the severity of the crime, the traffic conditions, and the danger to the public. Officer Shoemaker testified that, if the danger to the public becomes greater than the severity of the crime, officers will stop pursuing a fleeing vehicle. Officer Shoemaker then acknowledged that, during their pursuit of the vehicle Mr. Dardie was driving, he did not see any vehicle traffic or pedestrians, and that he felt the conditions were safe enough to continue the pursuit through a residential neighborhood while traveling over 50 m.p.h. Officer Shoemaker also testified, however, that he was more concerned with cross-traffic vehicles and pedestrians walking into the roadway. On re-direct, Officer Shoemaker testified that the vehicle Mr. Dardie was driving sustained serious damage, that the damage was disabling, and that the vehicle could not be driven after the incident.

{¶11} After Officer Shoemaker's testimony, the trial court discussed a proposed stipulation with the State and defense counsel outside the presence of the jury. Because Officer Bower was attending SWAT training and was unavailable to testify at trial, the parties agreed to the following stipulation as to how Officer Bower would have testified regarding Mr. Dardie's speed: "While fleeing, Dardie was driving over 80 miles an hour into a residential neighborhood." The trial court then called the jury back into the courtroom, explained that Officer Bower was unavailable to testify, and that the parties agreed to the following stipulation, which the jury was

required to accept: "While the Defendant was fleeing, [Officer Bower] clocked Mr. Dardie driving his vehicle over 80 miles an hour in a residential area."

{¶12} After the trial court provided the stipulation to the jury, the State called the owner of the vehicle as a witness. The owner testified that the vehicle was in excellent condition prior to the incident on April 19, 2021, and that his insurance company evaluated the damage and deemed the vehicle totaled. The State then rested, and the defense did not offer any evidence.

{¶13} When instructing the jury, the trial court reminded the jury that it was not permitted to consider anything that the trial court struck from the record for any purpose whatsoever. As previously noted, the jury ultimately found Mr. Dardie guilty of failure to comply, and not guilty of receiving stolen property. Mr. Dardie now appeals his conviction, raising five assignments of error for this Court's review.

II.

ASSIGNMENT OF ERROR I

THE VERDICT FORM IN THIS CASE DOES NOT INDICATE THAT THE ELEMENTS OF R.C. 2921.331(B) ARE CONNECTED AND IMPLICATED, AND THEREFORE THE VERDICT FORM THE JURY SIGNED DOES NOT COMPLY WITH THE REQUIREMENTS SETTING FORTH THE ADDITIONAL ELEMENTS THAT ENHANCE THE CRIME OF FAILURE TO COMPLY FROM A MISDEMEANOR TO A FELONY AND IT THEREFORE SUPPORTS ONLY A MISDEMEANOR CONVICTION.

{¶14} In his first assignment of error, Mr. Dardie argues that the verdict form used for the charge of failure to comply did not support a felony conviction because it did not: (1) refer to or include the language from R.C. 2921.331(B) (i.e., that he operated the motor vehicle "so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop"); or (2) set forth the degree of the offense (i.e., a third-degree felony). Mr. Dardie argues that, under the Ohio Supreme Court's precedent in

*State v. McDonald*, 137 Ohio St.3d 517, 2013-Ohio-5042, in order to elevate the charge of failure to comply from a misdemeanor to a felony, the verdict form was required to either refer to or include the language of R.C. 2921.331(B), or set forth the degree of the offense. Because it did neither, he argues, the verdict form in this case only supports a misdemeanor conviction for failure to comply. For the following reasons, this Court agrees.

{¶15} "The sufficiency of a jury verdict form to justify convicting a defendant of a greater degree of a criminal offense presents a question of law, which this Court reviews de novo." *State v. Oliver*, 9th Dist. Summit No. 29535, 2021-Ohio-4153, ¶ 14, quoting *State v. Brown*, 9th Dist. Summit No. 25206, 2010-Ohio-4863, ¶ 15. R.C. 2945.75(A)(2) provides:

> When the presence of one or more additional elements makes an offense one of more serious degree[,] * * * [a] guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged.

{¶16} The Ohio Supreme Court analyzed R.C. 2945.75(A)(2) in *State v. Pelfrey*, 112 Ohio St.3d 422, 2007-Ohio-256, holding that "[p]ursuant to the clear language of R.C. 2945.75, a verdict form signed by a jury must include either the degree of the offense of which the defendant is convicted or a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of a criminal offense." *Pelfrey* at syllabus; *see also McDonald* at ¶ 13 (reciting the language from *Pelfrey*). In doing so, the Ohio Supreme Court explained that:

> [t]he express requirement of the statute cannot be fulfilled by demonstrating additional circumstances, such as that the verdict incorporates the language of the indictment, or by presenting evidence to show the presence of the aggravated element at trial or the incorporation of the indictment into the verdict form, or by showing that the defendant failed to raise the issue of the inadequacy of the verdict form.

*Pelfrey* at ¶ 14. The Ohio Supreme Court reiterated this point most recently in *McDonald*, stating that "*Pelfrey* makes clear that in cases involving offenses for which the addition of an element or

elements can elevate the offense to a more serious degree, the verdict form itself is the only relevant thing to consider in determining whether the dictates of R.C. 2945.75 have been followed." *McDonald* at ¶ 17.

{¶17} Here, the indictment indicates that Mr. Dardie was charged with failure to comply under R.C. 2921.331(B) and 2921.331(C)(5)(a)(ii). R.C. 2921.331(B) provides that "[n]o person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." A violation of R.C. 2921.331(B) is a first-degree misdemeanor except under certain circumstances. R.C. 2921.331(C)(3). For instance, as relevant in this case, under R.C. 2921.331(C)(5)(a)(ii), a violation of R.C. 2921.331(B) is a third-degree felony if the operation of the motor vehicle caused a substantial risk of serious physical harm to persons or property. *See McDonald* at ¶ 5.

{¶18} In *McDonald*, the Ohio Supreme Court explained that "[o]nly a violation of R.C. 2921.331(B) can be the basis of an enhancement under R.C. 2921.331(C)(5)(a)(ii) for creating a substantial risk of injury or damage to property[,]" and that, without the element of "willful elusion or flight from a police officer[,] * * * there can be no felony." *Id.* at ¶ 20, 22. The *McDonald* Court made clear that:

> To properly convict [a defendant] of a violation of R.C. 2921.331(B) as enhanced by R.C. 2921.331(C)(5)(a)(ii), the verdict would have to either state that [the defendant] was guilty of a third-degree felony or set forth the additional elements that transform the failure to comply with the order or signal of a police officer from a misdemeanor to a third-degree felony.

*Id.* at ¶ 19. In other words, the verdict form must connect the "substantial risk" element to the "willful elusion or flight from a police officer" element, which is the "only path to a felony conviction for failure to comply[.]" *Id.* at ¶ 22. Without a finding of "willful elusion or flight from a police officer[,]" a jury's "substantial risk" finding is "superfluous[.]" *Id.* at ¶ 22, 25.

**{¶19}** Here, the verdict form indicates that the jury found Mr. Dardie guilty of failure to comply with an order or signal of a police officer, and that he caused a substantial risk of serious physical harm to persons or property during the commission of the offense. In *McDonald*, like here, the verdict form indicated that the jury found the defendant guilty of failure to comply with an order or signal of a police officer, and that the defendant caused a substantial risk of serious physical harm to persons or property. *Id.* at ¶ 6. The verdict form, like here, did not indicate the degree of the offense (i.e., a third-degree felony), nor did it refer to or include the language from R.C. 2921.331(B) (i.e., that the defendant operated the motor vehicle "so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop"). *Id.* Because the verdict form did not indicate the degree of the offense or refer to or include the language from R.C. 2921.331(B), the *McDonald* Court held that the verdict form only supported a finding of guilty of the least degree of the offense charged, that is, a first-degree misdemeanor. *McDonald* at ¶ 23, 25.

**{¶20}** *McDonald* is directly on point with this case and is controlling law. *State v. Cutlip*, 9th Dist. Lorain No. 08CA009353, 2008-Ohio-4999, ¶ 17, quoting *Gehad & Mandi Inc. v. Ohio State Liquor Control Comm'n*, 10th Dist. Franklin No. 05AP-1181, 2006-Ohio-3081, ¶ 7 ("This court as an intermediate appellate court, is bound by, and must follow and apply, the decisions of the Ohio Supreme Court."); *Cooke v. Montgomery Cty.*, 158 Ohio App.3d 139, 2004-Ohio-3780, ¶ 39 (2d Dist.2004) ("Appellate courts are bound by and must follow decisions of the Ohio Supreme Court, which are regarded as law unless and until reversed or overruled."). The only relevant difference between the verdict form in this case and the verdict form in *McDonald* is that, in this case, the verdict form indicates that the jury found Mr. Dardie guilty of failure to comply "as charged in the indictment[.]" The *McDonald* verdict form did not refer to the indictment.

*McDonald* at ¶ 6. This, however, is a distinction without a difference under *McDonald*. *McDonald*, relying on *Pelfrey*, makes clear that "the verdict form itself is the only relevant thing to consider in determining whether the dictates of R.C. 2945.75 have been followed." *McDonald* at ¶ 17. Thus, the fact that the verdict form referred to the indictment does not change the outcome of this case. *See McDonald* at ¶ 17, quoting *Pelfrey* at ¶ 14 (stating that the dictates of R.C. 2945.75(A)(2) "cannot be fulfilled by demonstrating additional circumstances, such as that the verdict incorporates the language of the indictment[.]").

{¶21} Put simply, the verdict form in this case failed to connect the "substantial risk" element to the "willful elusion or flight from a police officer" element, which is the "only path to a felony conviction for failure to comply[.]" *McDonald* at ¶ 22; R.C. 2921.331(B); R.C. 2921.331(C)(5)(a)(ii). Consistent with *McDonald*, this Court concludes that the verdict form in this case supports a first-degree misdemeanor under R.C. 2921.331(C)(3). *McDonald* at ¶ 23, 25; *see Oliver*, 2021-Ohio-4153, at ¶ 19. Accordingly, we reverse the trial court's judgement of conviction and remand the cause for the trial court to enter a judgment convicting Mr. Dardie of failure to comply with an order or signal of a police officer as a first-degree misdemeanor. *See McDonald* at ¶ 26; *Oliver* at 65. Mr. Dardie's first assignment of error is sustained.

ASSIGNMENT OF ERROR II

THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE JURY VERDICT OF "GUILTY" AS TO COUNT ONE, THE CHARGED OFFENSE OF FAILURE TO COMPLY WITH AN ORDER OR SIGNAL OF POLICE OFFICER, AS THERE IS INSUFFICIENT PROOF BEYOND REASONABLE DOUBT THAT MR. DARDIE DID CAUSE A SUBSTANTIAL RISK OF SERIOUS PHYSICAL HARM TO PERSONS OR PROPERTY DURING THE COMMISSION OF THE OFFENSE CHARGED.

{¶22} In his second assignment of error, Mr. Dardie argues that the State failed to present sufficient evidence to support his conviction for failure to comply solely because the State did not

establish that his operation of the motor vehicle caused a substantial risk of serious physical harm to persons or property. This Court's resolution of Mr. Dardie's first assignment of error, however, renders this argument moot because the "substantial risk" element pertains to a third-degree-felony conviction, and this Court has directed the trial court to enter a judgment convicting Mr. Dardie of a first-degree misdemeanor. *See State v. Lloyd*, 2d Dist. Montgomery No. 22013, 2008-Ohio-1874, ¶ 54-55 (holding that the verdict form supported a misdemeanor, not a felony, conviction under *Pelfrey*, and that the defendant's sufficiency argument related to an element that elevated the offense from a misdemeanor to a felony was rendered moot). Accordingly, Mr. Dardie's second assignment of error is overruled on the basis that it is moot. *See* App.R. 12(A)(1)(c).

### ASSIGNMENT OF ERROR III

THE VERDICT AND CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AS THE JURY CLEARLY LOST ITS WAY AND THUS CREATED A MANIFEST MISCARRIAGE OF JUSTICE.

**{¶23}** In his third assignment of error, Mr. Dardie argues that his conviction was against the manifest weight of the evidence because the "jury lost its way in determining that [he] caused a substantial risk of physical harm to persons or property beyond a reasonable doubt." As explained in this Court's resolution of Mr. Dardie's second assignment of error, any argument regarding the "substantial risk" element of failure to comply has been rendered moot by this Court's disposition of Mr. Dardie's first assignment of error. This Court, therefore, will not address Mr. Dardie's third assignment of error on the basis that it is moot. *See* App.R. 12(A)(1)(c).

### ASSIGNMENT OF ERROR IV

THE COURT ERRED IN FAILING TO GRANT A MISTRIAL WHEN THE STATE'S DIRECT EXAM ELICITED INFORMATION THAT MR. DARDIE HAD A WARRANT FOR HIS ARREST.

**{¶24}** In his fourth assignment of error, Mr. Dardie argues that the trial court erred by not granting a mistrial after the State elicited testimony from Officer Shoemaker that Mr. Dardie had a warrant out for his arrest. For the following reasons, this Court disagrees.

**{¶25}** A mistrial must be declared "only when the ends of justice so require and a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 127 (1991), citing *Illinois v. Somerville*, 410 U.S. 458, 462-463 (1973) and *Arizona v. Washington*, 434 U.S. 497, 505-506 (1978). Because "the trial judge is in the best position to determine whether the situation in [the] courtroom warrants the declaration of a mistrial[,]" the decision is one committed to the discretion of the trial court. *State v. Glover*, 35 Ohio St.3d 18, 19 (1988). "This Court reviews a trial court's decision to deny a mistrial for an abuse of discretion." *State v. Rones*, 9th Dist. Summit No. 30073, 2023-Ohio-60, ¶ 16. "In analyzing whether a defendant was deprived of a fair trial, an appellate court must determine whether, absent the improper remarks, the jury would have found the appellant guilty beyond a reasonable doubt." *Columbus v. Aleshire*, 10th Dist. Franklin No. 09AP-104, 2010-Ohio-2773, ¶ 42, citing *State v. Maurer*, 15 Ohio St.3d 239, 267 (1984).

**{¶26}** Here, as previously noted, during the course of testifying as to how the officers identified Mr. Dardie, who originally told the officers that his first name was Anthony, Officer Shoemaker testified that another officer indicated that he recognized Mr. Dardie "from the homepage[,]" meaning the Akron Police Department's intranet homepage. Officer Shoemaker explained that the homepage contains pictures of "people who are wanted in Akron with warrants * * *." Defense counsel objected and moved for a mistrial, which the trial court denied. The trial court then addressed the jury as follows:

> [T]he Court is going to * * * strike the last statement of the officer regarding the fact that the Defendant, quote, had a warrant out on him.

I'm telling you do not consider it for any purpose whatsoever; number one, it may not be true. It may not be true.

Also, if there was a warrant, it could be for failure to pay courts costs. In any event, you are not to consider that in any way in rendering a verdict in this case.

And you must decide this case only on the evidence. I am instructing you to disregard that testimony as though you never heard it and do not consider it for any purpose.

**{¶27}** On appeal, Mr. Dardie acknowledges that, in general, this type of curative instruction may have cured any error or prejudice that resulted from Officer Shoemaker's remark. Mr. Dardie asserts, however, that the curative instruction did not "neutralize the prejudice" in this case because Officer Shoemaker's remark was not a fleeting remark, and the error was compounded by the fact that he appeared at trial in an orange jumpsuit with handcuffs and leg shackles.

**{¶28}** Mr. Dardie's argument lacks merit. Officer Shoemaker's reference to the arrest warrant was brief and isolated, and the trial court gave a curative instruction almost immediately following the remark. *See State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, ¶ 175 (holding that the trial court did not err by denying the defendant's motion for a mistrial when a reference to the defendant's prior conviction was brief and isolated, and was followed by a curative instruction). "[A] jury is presumed to follow curative instructions given by the trial court and therefore a trial court sustaining an objection and giving a curative instruction has been held to be enough to cure the taint from an improper statement." *State v. Mobley*, 2d Dist. Montgomery No. 18878, 2002 WL 506626, *2 (Apr. 5, 2002), citing *State v. Garner*, 74 Ohio St.3d 49, 59 (1995).

**{¶29}** Additionally, to the extent Mr. Dardie asserts that the prejudice he suffered from Officer Shoemaker's improper remark was compounded by the fact that he appeared at trial in an orange jumpsuit with handcuffs and leg shackles, he has not developed any argument with citations

to legal authority as to how the trial court erred by allowing him to appear at trial in an orange jumpsuit (which he elected to wear) with handcuffs and leg shackles, or as to how the trial court's decision in this regard warranted a mistrial. *See* App.R. 16(A)(7). "[T]his Court will not 'guess at undeveloped claims on appeal' or construct arguments to support an assignment of error." *State v. Beverly*, 9th Dist. Summit No. 28627, 2019-Ohio-957, ¶ 6, quoting *McPherson v. Goodyear Tire & Rubber Co.*, 9th Dist. Summit No. 21499, 2003-Ohio-7190, ¶ 31.

**{¶30}** Moreover, this Court has directed the trial court to enter a judgment convicting Mr. Dardie of failure to comply with an order or signal of a police officer as a first-degree misdemeanor. At trial, there was no dispute that Mr. Dardie failed to comply with an order or signal of a police officer when he fled from the officers after they attempted to conduct a felony stop. Instead, the dispute centered upon whether Mr. Dardie created a substantial risk of serious physical harm to persons or property while doing so. Thus, this Court concludes that, even absent Officer Shoemaker's improper remark, the jury would have still found Mr. Dardie guilty of failure to comply with an order or signal of a police officer beyond a reasonable doubt. *Aleshire* at ¶ 42.

**{¶31}** Having reviewed the record, this Court concludes that the trial court did not abuse its discretion when it denied defense counsel's motion for a mistrial. Mr. Dardie's fourth assignment of error is overruled.

ASSIGNMENT OF ERROR V

> MR. DARDIE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS LAWYER FAILED TO PROPERLY ADDRESS THE STIPULATION WHEN THE COURT INSTRUCTED THE JURY THAT MR. DARDIE WAS "CLOCKED" AT GOING 80 MILES PER HOUR WHEN THAT WAS NOT THE STIPULATION AT ALL.

**{¶32}** In his fifth assignment of error, Mr. Dardie argues that his defense counsel rendered ineffective assistance by failing to object to the trial court's use of the word "clocked" when

providing the stipulation as to Officer Bower's testimony to the jury. For the following reasons, this Court disagrees.

{¶33} "[I]n Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 62. To prevail on a claim of ineffective assistance of counsel, Mr. Dardie must establish: (1) that his counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[;]" and (2) that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one that falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. To establish prejudice, Mr. Dardie must show that there existed a reasonable probability that, but for his counsel's errors, the outcome of the proceeding would have been different. *State v. Sowell*, 148 Ohio St.3d 554, 2016-Ohio-8025, ¶ 138. "This Court need not address both prongs of *Strickland* if an appellant fails to prove either prong." *State v. Carter*, 9th Dist. Summit No. 27717, 2017-Ohio-8847, ¶ 27.

{¶34} As previously noted, the parties stipulated that Officer Bower would have testified that, "[w]hile fleeing, Dardie was driving over 80 miles an hour into a residential neighborhood." In advising the jury of this stipulation, however, the trial court recited the parties' stipulation as follows: "While the Defendant was fleeing, [Officer Bower] clocked Mr. Dardie driving his vehicle over 80 miles an hour in a residential area."

{¶35} As noted in this Court's analysis of Mr. Dardie's fourth assignment of error, a review of the trial transcript indicates that there was no dispute that Mr. Dardie failed to comply with an order or signal of a police officer when he fled from the officers after they attempted to conduct a felony stop. Instead, the dispute centered upon whether Mr. Dardie created a substantial

risk of serious physical harm to persons or property while doing so. The record makes clear that the State relied upon the evidence regarding the parties' respective vehicle speeds to establish the "substantial risk" element of failure to comply, which elevates that offense to a third-degree felony. R.C. 2921.331(C)(5)(a)(ii). Because this Court has already determined that Mr. Dardie's conviction must be reversed and the cause remanded for the trial court to enter a judgment convicting Mr. Dardie of failure to comply with an order or signal of a police officer as a first-degree misdemeanor, any argument pertaining to Mr. Dardie's conviction as a third-degree felony is now moot. *See Lloyd*, 2d Dist. Montgomery No. 22013, 2008-Ohio-1874, at ¶ 54-55. As a result, even if Mr. Dardie could prove that his defense counsel's performance was deficient, he cannot prove prejudice. Accordingly, he cannot establish ineffective assistance. *Carter* at ¶ 27 ("This Court need not address both prongs of *Strickland* if an appellant fails to prove either prong."). Mr. Dardie's fifth assignment of error is overruled.

## III.

**{¶36}** Mr. Dardie's first assignment of error is sustained. The trial court is ordered to enter a judgment finding Mr. Dardie guilty of failure to comply with an order or signal of a police officer as a first-degree misdemeanor. Mr. Dardie's other assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part, and the cause is remanded for further proceedings consistent with this decision.

Judgment affirmed in part,
reversed in part,
and cause remanded.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

JILL FLAGG LANZINGER
FOR THE COURT

SUTTON, P. J.
CARR, J.
CONCUR.

APPEARANCES:

RICHARD P. KUTUCHIEF, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.