[Cite as *Akron v. Calhoun*, 2023-Ohio-4840.]

STATE OF OHIO            )            IN THE COURT OF APPEALS
                        )ss:          NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT        )

CITY OF AKRON                         C.A. No.        30472

    Appellee

    v.                               APPEAL FROM JUDGMENT
                                     ENTERED IN THE
HOMELL T. CALHOUN                     AKRON MUNICIPAL COURT
                                     COUNTY OF SUMMIT, OHIO
    Appellant                       CASE No.        22-CR-05122

DECISION AND JOURNAL ENTRY

Dated: December 29, 2023

SUTTON, Presiding Judge.

{¶1}  Defendant-Appellant Homell T. Calhoun appeals from the judgment of the Akron Municipal Court.  This Court affirms in part and reverses in part.

I.

{¶2}  In the early morning hours of July 18, 2022, Sergeant Alicia Lindsey, a member of the police force at Akron Children's Hospital, was patrolling the hospital campus when she spotted a man laying in a grassy area next to a parking deck located at the corner of Exchange Street and Locust Street, in the City of Akron.  After noticing the man, Sergeant Lindsey pulled her vehicle over to approach the man and radioed dispatch.  Sergeant Lindsey approached the man and unsuccessfully tried to wake him up.  Within one minute of radioing her discovery to dispatch, two other Akron Children's Hospital police officers, Officer Brandon Broa and Officer Clarence Dorsey, arrived on the scene.  Slowly the man awoke, and the officers immediately began noticing

signs that the man was intoxicated. The officers later testified at trial that Mr. Calhoun had bloodshot eyes, slurred speech, and was unsteady on his feet.

{¶3} As the officers helped Mr. Calhoun to his feet, he had difficulty remaining on his feet. The officers asked for identification, and Mr. Calhoun became belligerent. Mr. Calhoun then proceeded to stick his hands in his pockets, which the officers asked him not to do. When he refused to comply with the officers' requests, the officers handcuffed Mr. Calhoun. The officers checked to see if Mr. Calhoun had any outstanding warrants, issued Mr. Calhoun a citation for disorderly conduct and criminal trespass, and then drove Mr. Calhoun home. The officers testified that they drove Mr. Calhoun home because he was highly intoxicated and allowing him to continue to proceed down Exchange Street would have been a risk to Mr. Calhoun's own safety.

{¶4} A complaint was issued that charged Mr. Calhoun with one count of disorderly conduct, in violation of Akron City Ordinance 132.01(A)(1), and one count of criminal trespass, in violation of Akron City Ordinance 131.08(B)(4). The case proceeded to trial. On the day of trial, but before the trial began, the City of Akron moved to amend the disorderly conduct count of the complaint, which cited Akron City Ordinance 132.01(A)(1), to a different subsection of the same ordinance, Akron City Ordinance 132.01(B)(2). The citation Mr. Calhoun was issued at the scene charged a violation of Akron City Ordinance 132.01(B)(2), however, the complaint generated by the Akron Municipal Clerk of Court charged a violation of Akron City Ordinance 132.01(A)(1). The judge allowed the City to amend the complaint and the case proceeded.

{¶5} After deliberating, a jury returned a verdict of not guilty on the count of criminal trespass and guilty on the count of disorderly conduct. Mr. Calhoun was sentenced to 30 days in jail, suspended, and one year of community control. Mr. Calhoun was also ordered to undergo a drug and alcohol evaluation.

**{¶6}** Mr. Calhoun timely appealed, assigning six errors for this Court's review.

II.

**ASSIGNMENT OF ERROR I**

**THE JURY'S VERDICT FORM FOR THE DISORDERLY CONDUCT COUNT DOES NOT COMPLY WITH R.C. 2945.75(A)(2) AND *PELFREY*, AND WAS, THUS, INSUFFICIENT TO CONVICT MR. CALHOUN OF A FOURTH-DEGREE MISDEMEANOR UNDER AKRON ORD. 132.01(E).**

**{¶7}** In his first assignment of error, Mr. Calhoun argues that verdict form used by the jury in convicting him of disorderly conduct was insufficient and does not comply with the mandates outlined in R.C. 2945.75(A)(2) and *State v. Pelfrey*, 112 Ohio St.3d 422, 2007-Ohio-256. We agree.

Standard of Review – Jury Verdict Forms

**{¶8}** "The sufficiency of a jury verdict form to justify convicting a defendant of a greater degree of a criminal offense presents a question of law, which this Court reviews de novo." *State v. Dardie*, 9th Dist. Summit No. 30168, 2023-Ohio-1656, ¶ 15, citing *State v. Oliver*, 9th Dist. Summit No. 29535, 2021-Ohio-4153, ¶ 14, quoting *State v. Brown*, 9th Dist. Summit No. 25206, 2010-Ohio-4863, ¶ 15.

Jury Verdict Form

**{¶9}** Revised Code 2945.75(A)(2) provides that,

(A) When the presence of one or more additional elements makes an offense one of more serious degree:

(2) A guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged.

"R.C. 2945.75(A) plainly requires that in order to find a defendant guilty of 'an offense * * * of more serious degree,' the guilty verdict must *either* state 'the degree of the offense of which the

offender is found guilty' *or* state that 'additional element or elements are present.'" (Emphasis added.) *State v. Pelfrey*, 112 Ohio St.3d 422, 2007-Ohio-256, ¶ 12*,* quoting R.C. 2945.75(A). "*Pelfrey* makes clear that in cases involving offenses for which the addition of an element or elements can elevate the offense to a more serious degree, the verdict form itself is the *only* relevant thing to consider in determining whether the dictates of R.C. 2945.75 have been followed." (Emphasis added.) *State v. McDonald*, 137 Ohio St.3d 517, 2013-Ohio-5042, ¶ 17.

{¶10} Mr. Calhoun was convicted of violating Akron City Ordinance 132.01(B)(2), which states in relevant part:

> B. No person, while voluntarily intoxicated, shall do either of the following: * * *
>     2. Engage in conduct or create a condition which presents a risk of physical harm to himself or another, or to the property[.]

The ordinance also contains subsection, 132.01(E), that enhances the offense from a minor misdemeanor to a misdemeanor of the fourth degree. That subsection states:

> E. Whoever violates this section is guilty of disorderly conduct, a minor misdemeanor, except that if the offender persists in disorderly conduct after reasonable warning or request to desist, or if the offender is within one thousand feet of the boundaries of any school, school premises, or school building, disorderly conduct is a misdemeanor of the fourth degree. * * *

{¶11} Here, Mr. Calhoun was convicted of a misdemeanor of the fourth degree for persisting in disorderly conduct after reasonable warning or request to desist. However, the verdict form, in its entirety, states:

> We, the jury, find the defendant, HOMELL CALHOUN, guilty of DISORDERLY CONDUCT pursuant to a violation of the Akron City Code 132.01.

The jury verdict form does not specify the degree of the offense, nor does it include any aggravating elements. "Therefore, 'the guilty verdict constitutes a finding of guilty of the least degree of the offense charged.'" *See Oliver* at ¶ 19, citing R.C. 2945.75(A)(2).

{¶12} Because Mr. Calhoun's verdict form does not include either the degree of his disorderly conduct conviction or the additional element that he persisted in disorderly conduct after reasonable warning or request to desist, Mr. Calhoun should have only been convicted of a minor misdemeanor for his disorderly conduct offense. *See State v. Wilson*, 9th Dist. Lorain No. 12CA010263, 2014-Ohio-3182, ¶ 29; *see also Dardie*, 2023-Ohio-1656, at ¶ 20. Accordingly, we reverse the trial court's judgment of conviction and remand the cause of the trial court to enter a judgment convicting Mr. Calhoun of disorderly conduct as a minor misdemeanor. *Id.*

{¶13} Mr. Calhoun's first assignment of error is sustained.

### ASSIGNMENT OF ERROR II

**THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO CONVICT MR. CALHOUN OF DISORDERLY CONDUCT BY INTOXICATION, A MISDEMEANOR OF THE FOURTH DEGREE OR A MINOR MISDEMEANOR, UNDER AKRON ORD. 132.01(B)(2)**

{¶14} In his second assignment of error, Mr. Calhoun argues his conviction for disorderly conduct was insufficient as a matter of law because the City of Akron failed to prove that Mr. Calhoun was voluntarily intoxicated or that he created a condition that presented a risk of physical harm to himself or the property of another. For the reasons that follow, we disagree.

Standard of Review – Sufficiency of the Evidence

{¶15} "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 9th Dist. Summit No. 24731, 2009-Ohio-6955, ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins* at 390 (Cook, J., concurring). For purposes of a sufficiency analysis, this Court must view the evidence in the light most favorable to the State. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We do not evaluate credibility, and we make all reasonable inferences in

favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id*.

<u>The State presented sufficient evidence to establish Mr. Calhoun was guilty of disorderly conduct.</u>

{¶16}  We note that in his argument, Mr. Calhoun argues the City presented insufficient evidence to support the enhancement of the disorderly conduct charge to a fourth-degree misdemeanor pursuant to Akron City Ordinance 132.01(E).  However, given our resolution of the first assignment of error, we will not address the sufficiency of the evidence presented related to the enhancement because Mr. Calhoun cannot be sentenced to the fourth-degree misdemeanor given the error in the jury verdict form.  We confine our analysis to whether or not the City presented sufficient evidence to convict Mr. Calhoun of disorderly conduct in violation of Akron City Ordinance 132.01(B)(2).

{¶17}  The jury was instructed on, and found Mr. Calhoun guilty of, disorderly conduct in violation of Akron City Ordinance 132.01(B)(2).  The ordinance provides that "[n]o person, while voluntarily intoxicated, shall * * * [e]ngage in conduct or create a condition which presents a risk of physical harm to himself or another, or to the property of another."  Akron City Ordinance 130.02 defines "risk" as "a significant possibility, as contrasted with a remote possibility, that a certain result may occur or that certain circumstances may exist."

{¶18}  With respect to the requirement that the City prove beyond a reasonable doubt that Mr. Calhoun was voluntarily intoxicated, the City presented the testimony of the three responding police officers, who all testified based on their training and experience, Mr. Calhoun was voluntarily intoxicated.  Sergeant Lindsey testified she believed Mr. Calhoun was intoxicated because "the bloodshot eyes, the unsteady speech, the staggering back and forth, the slurred

speech." Additionally, she testified Mr. Calhoun "stated he was coming from the bars and that he was just trying to get home." Officer Broa testified Mr. Calhoun "was slurring [his speech]. He was very hard to understand. He was stumbling around. We had to catch him a few times." Officer Broa testified "it was pretty clear" that Mr. Calhoun "appeared to be highly intoxicated." Officer Dorsey believed Mr. Calhoun was intoxicated because Mr. Calhoun "smelled like * * * he was intoxicated. He had that smell plus he was sleeping it off in the grass[.] He could not stand up." Therefore, construing this testimony in a light most favorable to the City, we cannot say the City failed to establish that Mr. Calhoun was voluntarily intoxicated.

{¶19} With respect to the requirement the City present sufficient evidence to establish Mr. Calhoun "[e]ngage[d] in conduct or create[d] a condition which presents a risk of physical harm to himself or another, or to the property of another," the City again presented the testimony of the three police officers who all testified to the various ways in which they thought Mr. Calhoun presented a risk of physical harm to himself and to others.

{¶20} All three officers testified that Mr. Calhoun was sleeping in a grassy area located near the intersection of Exchange Street and Locust Street, which presented a risk to his physical safety. All three officers testified to Exchange Street being a busy traffic area, even in the middle of the night. Officer Dorsey stated, "we have a lot of traffic on Exchange and Locust and at that time of night you get the bar crowds be flying down Exchange."

{¶21} Moreover, Mr. Calhoun told the officers he was going to walk home, despite his intoxicated state. Sergeant Lindsey testified that "upon seeing [Mr. Calhoun] start moving, walking, staggering," the officers became concerned for Mr. Calhoun's safety and believed that based on his level of intoxication he was a danger to himself. Officer Broa testified that Mr. Calhoun's level of intoxication presented a risk to Mr. Calhoun's personal safety. As Officer

Dorsey stated, "we told him we did not want him to walk home especially being intoxicated like that." Officer Dorsey testified Mr. Calhoun was so intoxicated that he believed that if the officers had let Mr. Calhoun walk home, "[h]e would have went out there on Exchange Street and probably got hit [by a vehicle]. He was that much intoxicated." Construing this testimony in a light most favorable to the City, we cannot say the City failed to present sufficient evidence to establish that Mr. Calhoun presented a risk to his physical safety.

{¶22} Mr. Calhoun argues he "was simply walking home allegedly intoxicated on a beautiful, warm, summer night in July in Akron and decided he was too tired to complete his trek. He then found the safest, most comfortable place to take a nap so that he could rest up a bit and then finish his journey." He argues this Court's holding in *City of Lorain v. Wright*, 11 Ohio App.3d 200 (9th Dist.1983) supports the idea that he was not at risk to himself. In *Wright* at 202, this Court found insufficient evidence to sustain a conviction for disorderly conduct where the defendant locked himself inside of his car on his estranged wife's property. This Court noted "once intoxicated, [a defendant] must use whatever care he possesses to act safely. Here, [the defendant] simply climbed into his car, locked the doors and fell asleep. It would appear that he performed the safest act available to him at the time." *Id.* In this case, Mr. Calhoun was passed out asleep, in a highly intoxicated state, along a busy roadway in the middle of the night. All three police officers testified to the fact that the street was heavily trafficked, even at night. When roused by officers, Mr. Calhoun was staggering and indicated he was going to walk home and, as Officer Dorsey stated, "[Mr. Calhoun] would have went out there on Exchange Street and probably got hit [by a vehicle]. He was that much intoxicated." Mr. Calhoun, who was passed out asleep in a highly intoxicated state along a busy roadway in the middle of the night, and who planned to walk down the street in this intoxicated state, presented a serious risk of harm to his person. As such,

unlike the defendant in *Wright*, we cannot say Mr. Calhoun was performing the safest act available to him.

{¶23} Mr. Calhoun's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

**THE TRIAL COURT COMMITTED PLAIN ERROR BY FAILING TO GIVE THE JURY INSTRUCTION ON MR. CALHOUN'S RIGHT TO REMAIN SILENT AND NOT TESTIFY AT TRIAL, IN DEROGATION OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION.**

{¶24} In his third assignment of error, Mr. Calhoun argues the trial court committed plain error by failing to instruct the jury regarding his constitutional right not to testify at trial. For the reasons that follow, we disagree.

{¶25} "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). As this Court previously stated in *State v. Harris*, 9th Dist. Summit No. 29583, 2020-Ohio-4365, ¶ 19, quoting *State v. Martin*, 154 Ohio St.3d 513, 2018-Ohio-3226, ¶ 28:

> By its very terms, [Crim.R. 52(B)] places three limitations on a reviewing court's decision to correct an error that was not raised below. First, an error, i.e., a deviation from a legal rule, must have occurred. Second, the error complained of must be plain – that is, it must be an obvious defect in the * * * proceedings. Third, the error must have affected substantial rights. We have interpreted this * * * to mean that the trial court's error must have affected the outcome of the proceedings.

Thus, "[t]his Court may not reverse the judgment of the trial court on the basis of plain error, unless appellant has established that the outcome of trial clearly would have been different but for the alleged error." *State v. Higgins*, 9th Dist. Summit No. 27700, 2018-Ohio-476, ¶ 27, quoting *State v. Klingel*, 9th Dist. Lorain No. 15CA010876, 2017- Ohio-1183, ¶ 29. More simply, "[a]n improper or erroneous jury instruction does not constitute plain error unless, but for the error, the outcome of the trial would clearly have been different." *State v. Barker*, 8th Dist. Cuyahoga No. 111597,

2023-Ohio-453, ¶ 28. As the Ohio Supreme Court has stated, "[n]otice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶26} In *State v. Fanning*, 1 Ohio St.3d 19 (1982), paragraph one of the syllabus, the Ohio Supreme Court stated the following with respect to jury instructions regarding a defendant's failure to testify:

> A trial judge has the constitutional obligation, upon proper request, to minimize the danger that the jury will give evidentiary weight to a defendant's failure to testify. Upon proper request, defendant has a right, under the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment, to have the judge instruct the jury that the defendant's failure to testify cannot be considered for any purpose. The trial court has a mandatory constitutional duty to give such a requested instruction.

Here, the trial court was only required to advise the jury "upon proper request" of Mr. Calhoun. The record shows that Mr. Calhoun did not file a written jury instruction request at the close of evidence pursuant to Crim.R. 30. Since such a request must be in writing and made at the close of the evidence or at such earlier time as the court reasonably directs in order to be proper, and Mr. Calhoun did not make such a request, the trial court did not err in not giving the instruction. Because "error * * * [is] the starting point for a plain error inquiry[,]" Mr. Calhoun's argument is not well-taken. *State v. Terry*, 9th Dist. Summit No. 30137, 2023-Ohio-2234, ¶ 33, citing *State v. Gibson*, 9th Dist. Summit No. 30078, 2022-Ohio-1653, ¶ 15, quoting *State v. Hill*, 92 Ohio St.3d 191, 200 (2001) and citing Crim.R. 52(B).

{¶27} Mr. Calhoun's third assignment of error is overruled.

**ASSIGNMENT OF ERROR IV**

**THE TRIAL COURT ERRED TO THE PREJUDICE OF MR. CALHOUN BY PERMITTING THE CITY TO AMEND THE COMPLAINT ON THE**

**DAY OF TRIAL, OVER HIS OBJECTION, FROM AKRON ORD. 132.01(A)(1) TO 132.01(B)(2) AS SAID AMENDMENT CHANGED THE IDENTITY OF THE OFFENSE, IN DEROGATION OF CRIM.R. 7(D).**

**{¶28}** In his fourth assignment of error, Mr. Calhoun argues the trial court erred in permitting the City to amend the complaint the day of trial. For the reasons that follow, we disagree.

### Standard of Review – Amendment of Complaint

**{¶29}** "A trial court's decision to allow the amendment of an indictment is reviewed under an abuse-of-discretion standard." *State v. Gray*, 9th Dist. Summit No. 27365, 2015-Ohio-1248, ¶ 7, citing *State v. Sauto*, 9th Dist. Summit No. 26404, 2013-Ohio-1320, ¶ 10. An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). In addition to demonstrating that the trial court abused its discretion, the defendant must also show that the amendment prejudiced his defense in order to prove that the trial court committed reversible error. *Gray* at ¶ 7, citing *State v. Dudukovich*, 9th Dist. Lorain No. 05CA008729, 2006–Ohio–1309, ¶ 16.

### Amending of a Criminal Complaint

**{¶30}** Crim.R. 7(D) states:

> The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged.

"An amendment that changes the penalty or degree of the charged offense changes the identity of the offense and is not permitted by Crim.R. 7(D)." *State v. Pepka*, 125 Ohio St.3d 124, 2010-Ohio-1045, ¶ 15. As long as the City complied with Crim.R. 7(D), it may cure a defective complaint by amendment, even if the original complaint omits an essential element of the offense with which the defendant is charged. *State v. O'Brien*, 30 Ohio St.3d 122, 127-128 (1987).

{¶31} Here, the City moved to amend the complaint the day of trial, changing the offense from one count of disorderly conduct pursuant to Akron City Ordinance 132.01(A)(1) to one count of disorderly conduct pursuant to Akron City Ordinance 132.01(B)(2). Akron City Ordinance 132.01(A)(1) states:

> No person shall recklessly cause inconvenience, annoyance, or alarm to another by * * * engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior[.]

Akron City Ordinance 132.01(B)(2) states:

> No person, while voluntarily intoxicated, shall * * * [e]ngage in conduct or create a condition which presents a risk of physical harm to himself or another, or to the property or another[.]

{¶32} In support of its amendment, the City argued that the citation Mr. Calhoun was issued by police officers at the scene listed a violation of Akron City Ordinance 132.01(B)(2), but a clerical error by the Clerk's office resulted in a defective complaint listing Akron City Ordinance 132.01(A)(1). In moving to amend the complaint, the proposed amendment did not change the name of the crime charged; the original and amended complaint both charged one count of disorderly conduct. While the elements of the offense changed with the proposed amendment, the penalty or degree of the offense did not change. Pursuant to Akron City Ordinance 132.01(E), both a violation of 132.01(A)(1) and a violation of 132.01(B)(2) are minor misdemeanors. Therefore, the identity of the offense did not change. *See Pepka* at ¶ 15.

{¶33} The record also shows defense counsel reviewed proposed jury instructions that incorporated the language of the amended offense with the prosecutor before trial, and the jury instructions were submitted as a joint exhibit of the City and Mr. Calhoun.

{¶34} Therefore, the trial court did not abuse its discretion in allowing the City to amend the complaint.

{¶35} Mr. Calhoun's fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR V

**THE TRIAL COURT ERRED TO THE PREJUDICE OF MR. CALHOUN BY SENTENCING HIM TO "COMPLETE A SUMMIT LINK EVALUATION AND FOLLOW ALL RECOMMENDATIONS" WITHOUT PUTTING IN THE SENTENCING JOURNAL ENTRY OR THE SUMMIT LINK ORDER, OR BY NOTIFYING HIM IN ANY WAY OF, A SPECIFIED DURATION OF TIME THAT THE WAS BOUND BY SUCH A COMMUNITY CONTROL SANCTION, IN DEROGATION OF R.C. 2929.25(A)(2), AND BY NOT NOTIFYING HIM OF THE CONSEQUENCES FOR VIOLATING SAID SANCTION, IN DEROGATION OF R.C. 2929.25(A)(3).**

{¶36} In his fifth assignment of error, Mr. Calhoun argues that the trial court erred in sentencing him to Summit Link evaluation and community control without assigning a specified duration. In light of this Court's resolution of the first assignment of error, this Court declines to address his fifth assignment of error as it has been rendered moot. *See* App.R. 12(A)(1)(c).

## ASSIGNMENT OF ERROR VI

**MR. CALHOUN RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL, IN DEROGATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION.**

{¶37} In his sixth assignment of error, Mr. Calhoun argues he received ineffective assistance of counsel because his trial counsel failed to object to the jury instructions and failed to argue that Mr. Calhoun did not present a risk of harm to himself when making his Crim.R. 29 motion. For the reasons that follow, we disagree.

Standard of Review – Ineffective Assistance of Counsel

{¶38} In order to prevail on a claim of ineffective assistance of counsel, Mr. Calhoun must show that "counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance." *State v. Reynolds*, 80 Ohio St.3d 670, 674 (1998), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The benchmark for judging any claim

of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland* at 686. Thus, a two-prong test is necessary to examine such claims. First, Mr. Calhoun must show that counsel's performance was objectively deficient by producing evidence that counsel acted unreasonably. *State v. Keith*, 79 Ohio St.3d 514, 534 (1997), citing *Strickland* at 687. Second, Mr. Calhoun must demonstrate that but for counsel's errors, there is a reasonable probability that the results of the trial would have been different. *Keith* at 534. "This Court need not address both prongs of the *Strickland* test if the appellant fails to satisfy either prong." *State v. Gannon*, 9th Dist. Medina No. 19CA0053-M, 2020-Ohio-3075, ¶ 23, citing *State v. Ray*, 9th Dist. Summit No. 22459, 2005-Ohio-4941, ¶ 10.

<u>Mr. Calhoun's trial counsel was not ineffective.</u>

{¶39} Mr. Calhoun argues that his trial counsel was ineffective for (1) failing to make an argument during his Crim.R. 29 motion that Mr. Calhoun did not present a risk of harm to himself and (2) failing to object to the jury instructions.

{¶40} With respect to Mr. Calhoun's assertion that trial counsel's alleged failure to argue Mr. Calhoun did not present a risk of harm to himself, when making a Crim.R. 29 motion for acquittal constituted ineffective assistance of counsel, this Court determines Mr. Calhoun's argument lacks merit. Mr. Calhoun posits it was error for his trial counsel to "argue[] that [Mr. Calhoun] wasn't a risk of harm to the police officers 'or anyone there'" Mr. Calhoun, however, does not explain how, but for counsel arguing the motion in a different way, there is a reasonable probability that the results of his trial would have been different. In fact, Mr. Calhoun concedes within the same argument that his trial counsel "did challenge this element; [Mr. Calhoun] just

didn't know who the victim was when he challenged it; and the term "anyone" could "actually refer to [Mr. Calhoun] himself[.]"

**{¶41}** With respect to trial counsel's alleged failure to object to the jury instructions, as stated in the third assignment of error, the trial court has the discretion to advise the jury on Mr. Calhoun's Fifth Amendment right to testify unless Mr. Calhoun requested the jury instruction. No such request for a jury instruction was made in this case. "[C]ounsel's decision not to request a jury instruction falls within the ambit of trial strategy." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 111, citing *State v. Lawson*, 64 Ohio St.3d 336, 341 (1992); *State v. Schaim*, 65 Ohio St.3d 51, fn. 9 (1992). "Furthermore, debatable trial tactics do not constitute ineffective assistance of trial counsel." *Id.*, citing *State v. Clayton*, 62 Ohio St.2d 45, 49 (1980); *State v. Leonard,* 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 146.

**{¶42}** Mr. Calhoun's sixth assignment of error is overruled.

### III.

**{¶43}** Mr. Calhoun's first assignment of error is sustained. His second, third, fourth, and sixth assignments of error are overruled and his fifth assignment of error is moot. The judgment of the Akron Municipal Court is affirmed in part, reversed in part, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Akron Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

 

BETTY SUTTON
FOR THE COURT

FLAGG LANZINGER, J.
CONCUR.

HENSAL, J.
CONCURS IN JUDGMENT ONLY.


APPEARANCES:

HOMELL T. CALHOUN, pro se, Appellant.

EVE V. BELFANCE, Director of Law, and BRIAN D. BREMER and KIRSTEN L. SMITH, Assistant Directors of Law, for Appellee.