[Cite as *State v. Soto*, 2024-Ohio-1457.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| COUNTY OF SUMMIT | )ss: )  | NINTH JUDICIAL DISTRICT |

| STATE OF OHIO | C.A. No. 30663 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| KEITH A. SOTO | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 22 03 1122 |

DECISION AND JOURNAL ENTRY

Dated: April 17, 2024

SUTTON, Judge.

{¶1} Defendant-Appellant Keith Soto appeals the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} A Summit County Grand Jury indicted Mr. Soto on one count of aggravated murder, three counts of murder, one count of aggravated robbery, two counts of felonious assault, two counts of having weapons while under disability, and one count of tampering with evidence. The indictment also included numerous firearm and repeat violent offender specifications.

{¶3} The indictment stemmed from a shooting that occurred in the City of Akron on February 10, 2022. Officers responding to a 911 call placed by one of the victims, D.I., discovered D.I. with a gunshot wound and D.I.'s half-brother, J.B., deceased inside D.I.'s vehicle. As officers responded to the shooting, a UPS driver also made a second 911 call. The driver called to report

seeing a gun laying on the side of an Interstate 77 off-ramp. The location of the gun was in close proximity to the shooting. Police officers responded to the location and recovered the gun.

{¶4} As the Akron police began conducting their investigation, they realized the sole eyewitness to the shooting, D.I., continually changed his story and eventually D.I. stopped cooperating with police. Detectives developed Mr. Soto as a suspect. Text messages showed that on the day of the shooting, Mr. Soto arranged to meet up with D.I. to conduct a sale of drugs. Cell phone records showed Mr. Soto, a resident of Cleveland, was in Akron at the time of the shooting, and showed Mr. Soto immediately leaving the Akron area after the shooting. Ballistic testing conducted on the gun recovered from the side of the road near the crime scene matched the bullets pulled from J.B.'s body. DNA testing showed DNA found on the trigger of that same gun matched a DNA sample taken from Mr. Soto.

{¶5} After Mr. Soto was arrested, the case proceeded to trial. Because D.I. failed to cooperate with the investigation, the State made a motion for the trial court to call D.I. as the court's witness. The trial court granted the motion, appointed counsel for D.I., and allowed D.I.'s counsel to speak with D.I. prior to his testimony. The State then made a motion to grant D.I. immunity in exchange for his testimony. After meeting with D.I., his counsel informed the trial court and the parties that D.I. planned to invoke his Fifth Amendment right against self-incrimination and not testify. The trial court then granted D.I. limited immunity and ordered him to testify.

{¶6} D.I. testified that on the day of the shooting, he arranged to go with J.B. to meet up with Mr. Soto at a gas station near D.I.'s home to sell Mr. Soto some marijuana. D.I.'s cousin had previously introduced D.I. and Mr. Soto. After meeting Mr. Soto at the gas station, both vehicles drove to a nearby side street. Mr. Soto then exited his vehicle and got into the back seat of D.I.'s

truck. While in the truck, D.I., J.B., and Mr. Soto smoked some marijuana and engaged in conversation. D.I. testified that Mr. Soto became disappointed in the quality of the marijuana D.I. was selling him. D.I. testified Mr. Soto then pulled out a gun, told D.I. to take the keys out of the ignition and throw them out the window, and said "[y]ou already know what this is." Mr. Soto then pointed the gun at D.I. and J.B. from the back seat. In the front seat, D.I. saw J.B. reach into a fanny pack and pull out a gun. From the back seat, Mr. Soto told J.B. to stop moving, and then suddenly began firing shots. D.I. testified as soon as he heard the gunshots, he fled and was shot as he exited his truck. D.I. ran to a nearby house until Mr. Soto left the scene. When D.I. returned to his vehicle, he saw J.B. was shot and attempted to drive him to the hospital. As he started to drive towards the hospital, D.I. realized his brother was already dead, so he turned around and proceeded back to the location of the shooting. D.I. called 911 to report the shooting on his way back to the location.

{¶7} D.I. testified he was previously uncooperative with the police investigation because he did not want to be seen as a "rat" by his peers. He testified that in his community, people who aid the police in their investigations are looked upon "like a child molester" and that testifying in court is seen as "telling."

{¶8} Mr. Soto took the stand as part of his defense. He admitted to shooting D.I. and J.B., but argued it was in self-defense. Mr. Soto alleged that D.I. had tried to rob him when Mr. Soto got in the back of D.I.'s truck. After getting into the truck, Mr. Soto claimed that D.I. pulled out a gun and pointed it at him. Mr. Soto testified a struggle ensued between Mr. Soto and D.I., and during that struggle, Mr. Soto was able to wrestle D.I.'s gun away from D.I. Mr. Soto testified he shot both D.I. and J.B. in self-defense using D.I.'s gun. Mr. Soto denied the weapon he used in the shooting belonged to him.

{¶9} The jury returned a verdict finding Mr. Soto guilty of one count of murder in violation of R.C. 2903.02(B) and (D)/R.C. 2929.02(B), an unclassified felony; two counts of felonious assault in violation of R.C. 2903.11(A)/(D)(1)(a), both felonies of the second degree; two counts of having weapons while under disability in violation of R.C. 2923.13(A)(2) and (3), both felonies of the third degree; and one count of tampering with evidence in violation of R.C. 2929.12(A)(1), a felony of the third degree. Each count contained firearm specifications. The jury acquitted Mr. Soto of the three other murder charges and the aggravated robbery charge.

{¶10} Having previously waived his right to be tried by the jury on the repeat violent offender specification, the trial court found Mr. Soto was a repeat violent offender. At sentencing, the trial court sentenced Mr. Soto to a term of incarceration of 37 years to life.

{¶11} Mr. Soto timely appealed, assigning six errors for this Court's review.

II.

**ASSIGNMENT OF ERROR I**

**[MR.] SOTO WAS CONVICTED IN COUNTS FOUR AND SEVEN ABSENT SUFFICIENT EVIDENCE.**

{¶12} In his first assignment of error, Mr. Soto argues the State failed to present sufficient evidence to sustain his convictions for felony murder and felonious assault. We disagree.

{¶13} "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 9th Dist. Summit No. 24731, 2009-Ohio-6955, ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins* at 390 (Cook, J., concurring). For purposes of a sufficiency analysis, this Court must view the evidence in the light most favorable to the State. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We do not evaluate credibility, and we make all reasonable inferences in

favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id.*

Count Four – Felony Murder

{¶14}  Pursuant to R.C. 2903.02,

> No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code.

The indictment charged Mr. Soto with the murder of J.B. and indicated that the underlying offense Mr. Soto committed was felonious assault. R.C. 2903.11(A)(2), the felonious assault statute, states "[n]o person shall knowingly * * * cause or attempt to cause physical harm to another * * * by means of a deadly weapon[.]" "'Deadly weapon' means any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." *See* R.C. 2903.11(E)(1) and R.C. 2923.11(A). A gun is a weapon capable of inflicting death. *State v. Davidson*, 9th Dist. Lorain No. 2565, 1977 WL 198990, *2 (Aug. 24, 1977).

{¶15}  The State presented physical evidence that showed the bullet and bullet fragments removed from J.B.'s body matched the firearm that had Mr. Soto's DNA on the trigger. Additionally, D.I. testified Mr. Soto brandished a gun at D.I. and J.B., and when Mr. Soto began firing, D.I. left the vehicle. When D.I. returned to the vehicle, J.B. was dead in the passenger seat. Additionally, Mr. Soto admitted to shooting J.B. during his own testimony. Construing this evidence in a light most favorable to the State, the State presented sufficient evidence to convict Mr. Soto of the murder of J.B.

{¶16} With respect to Mr. Soto's argument that the State failed to meet its burden of disproving Mr. Soto's self-defense claim, the Ohio Supreme Court has held that the State's "burden of disproving the defendant's self-defense claim beyond a reasonable doubt is subject to a manifest-weight review on appeal" and it is not part of the review of the sufficiency of the evidence. *See State v. Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, ¶ 27. Therefore, Mr. Soto's argument regarding the State's rebuttal of self-defense for sufficiency of the evidence is not part of the sufficiency of the evidence analysis and will not be reviewed here.

{¶17} Mr. Soto also argues in this assignment of error that the language of the statute requires the State to prove the underlying offense was not voluntary or involuntary manslaughter. This is not a sufficiency argument and is outside of the scope of this assignment of error. Mr. Soto repeatedly raises this argument throughout his brief, without citation to any case law for this interpretation of the statute. A plain reading of the language of the statute shows the predicate offense (1) must be a felony of the first or second degree and (2) cannot be involuntary or voluntary manslaughter. Here, the predicate offense was felonious assault, a felony of the second degree, and felonious assault is not involuntary or voluntary manslaughter. The case law supports this interpretation of the statute. In a case cited by Mr. Soto, the Tenth District Court of Appeals in *State v. Jennings*, 10th Dist. Franklin Nos. 09AP-70, 09-AP-75, 2009-Ohio-6840, ¶ 95 noted:

> R.C. 2903.02(B) prohibits voluntary and involuntary manslaughter from serving as the predicate felony, but the statute does not prohibit prosecuting an offender for felony murder merely because the offender could have also been charged with voluntary or involuntary manslaughter.

The Tenth District noted that the statute prohibits voluntary and involuntary manslaughter from serving as the predicate felony. The statute does not require the State to affirmatively disprove the offense was not voluntary or involuntary manslaughter.

{¶18} Mr. Soto's argument that the State presented insufficient evidence to establish felony murder is overruled.

Count Seven – Felonious Assault

{¶19} Mr. Soto also argues the State failed to present sufficient evidence to establish the identity of who shot D.I. because D.I. testified he did not know who shot him, J.B.'s Glock was missing 9 rounds, and there was evidence that both Mr. Soto and J.B. possessed firearms. For the following reasons, we disagree.

{¶20} Mr. Soto's assertion that D.I. testified he did not know who shot him is not an accurate reflection of the record. The portion of the record that Mr. Soto identifies for that assertion is when the State asked D.I. about statements he made. The transcript reads as follows:

| PROSECUTOR: | * * * you said you do not know who shot you. Do you remember hearing that [on the 911 call that was played in court]? |
|---|---|
| D.I.: | Correct. |
| PROSECUTOR: | Why did you say that? |
| D.I.: | I didn't want to be a part of this case at all. |

The prosecutor played D.I.'s call to 911 during which D.I. told the 911 call taker that he did not know who shot him. At trial, D.I. testified that Mr. Soto had a gun, and Mr. Soto began firing the gun, and he was shot by Mr. Soto as he attempted to flee his vehicle.

{¶21} Additionally, while J.B.'s Glock was missing 9 rounds, the police officer who recovered J.B.'s gun at the crime scene testified there was not a bullet in the chamber. A firearm expert also testified the gun would have had to have had a bullet in the chamber in order to be immediately fired. The expert explained in order to fire J.B.'s gun, the slide must be pulled back

to cause a bullet to enter the chamber and be fired. Also, D.I. testified J.B. had just pulled out his gun, and did not testify to his brother shooting anyone, when Mr. Soto began shooting.

{¶22} Lastly, Mr. Soto admitted during his own testimony that he shot D.I. Mr. Soto's argument that the State failed to present sufficient evidence to establish felonious assault is overruled.

{¶23} Mr. Soto's first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

**[MR.] SOTO'S CONVICTIONS MUST BE VACATED WHERE CONVICTED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

{¶24} In his second assignment of error, Mr. Soto argues his convictions were against the manifest weight of the evidence because the State failed to prove beyond a reasonable doubt that Mr. Soto did not act in self-defense. For the following reasons, we disagree.

{¶25} As this Court has previously stated:

[i]n determining whether a criminal conviction is against the manifest weight of the evidence an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *Thompkins*, 78 Ohio St.3d at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982).

{¶26} Moreover, an appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340. "[W]e are

mindful that the [trier of fact] is free to believe all, part, or none of the testimony of each witness." *State v. Gannon*, 9th Dist. Medina No. 19CA0053-M, 2020-Ohio-3075, ¶ 20. (Internal quotations and citations omitted.) "This Court will not overturn a conviction on a manifest weight challenge only because the [trier of fact] found the testimony of certain witnesses to be credible." *Id.* "[T]he jury is best able to view witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Cook*, 9th Dist. Summit No. 21185, 2003-Ohio-727, ¶ 30, quoting *Giurbino v. Giurbino*, 89 Ohio App.3d 646, 659 (8th Dist.1993).

{¶27} As this Court recently stated in *State v. Fleckenstein*, 9th Dist. Lorain No. 22CA011886, 2023-Ohio-4347, ¶ 23-24:

> Self-defense is an affirmative defense in Ohio. A defendant charged with an offense involving the use of force has the burden of producing legally sufficient evidence that his use of force was in self-defense. Once a defendant satisfies his burden of production, the burden of persuasion shifts to the State to prove beyond a reasonable doubt that the accused did not use force in self-defense. The State's burden is subject to a manifest-weight review on appeal.
>
> The elements of self-defense are as follows:
>
> (1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he [or she] was in imminent danger of death or great bodily harm and that his [or her] only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger.
>
> To carry its burden of persuasion, the State need only disprove one of the foregoing elements beyond a reasonable doubt.

(Internal quotations and citations omitted.)

{¶28} Here, the State and Mr. Soto presented two different versions of the events leading up to the shooting. Through the testimony of D.I., the State established that Mr. Soto shot both D.I. and J.B. as part of what D.I. believed to be an attempted robbery. Mr. Soto argued D.I. and

J.B. attempted to rob him, and he only obtained the gun he used to shoot both D.I. and J.B. after a struggle with D.I. inside of D.I.'s truck. D.I. testified that he was shot as he was fleeing the vehicle, and his injury was consistent with that testimony. The jury was in the best position to assess the credibility of the witnesses presenting the competing versions of events and the jury could have reasonably concluded that Mr. Soto was at fault for creating the situation that led to J.B.'s death. J.B. was shot three times, once directly in the back of the head. Therefore, Mr. Soto has not demonstrated this is the exceptional case where the evidence weighs heavily against the conclusion that the State disproved his claim of self-defense.

{¶29} Mr. Soto's second assignment of error is overruled.

### ASSIGNMENT OF ERROR III

**THE FAILURE TO GIVE NECESSARY JURY INSTRUCTIONS RESULTED IN INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL OR WAS OTHERWISE PLAIN ERROR.**

{¶30} In his third assignment of error, Mr. Soto argues the failure of his trial counsel to request an accomplice instruction amounted to ineffective assistance of counsel and was otherwise plain error. For the following reasons, we disagree.

Ineffective Assistance of Counsel

{¶31} Mr. Soto argues his trial counsel was ineffective because trial counsel's "failure to request the instruction was a lapse in care owed to [Mr. Soto] by his trial counsel and was prejudicial[.]" In order to prevail on a claim of ineffective assistance of counsel, Mr. Soto must show that "counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance." *State v. Reynolds*, 80 Ohio St.3d 670, 674 (1998), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the

adversarial process that the trial cannot be relied on as having produced a just result." *Strickland* at 686. Thus, a two-prong test is necessary to examine such claims. First, Mr. Soto must show that counsel's performance was objectively deficient by producing evidence that counsel acted unreasonably. *State v. Keith*, 79 Ohio St.3d 514, 534 (1997), citing *Strickland* at 687. Second, Mr. Soto must demonstrate that but for counsel's errors, there is a reasonable probability that the results of the trial would have been different. *Keith* at 534. "This Court need not address both prongs of the *Strickland* test if the appellant fails to satisfy either prong." *Gannon*, 2020-Ohio-3075, at ¶ 23, citing *State v. Ray*, 9th Dist. Summit No. 22459, 2005-Ohio-4941, ¶ 10.

{¶32} "[C]ounsel's decision not to request a jury instruction falls within the ambit of trial strategy." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 111, citing *State v. Lawson*, 64 Ohio St.3d 336, 341 (1992); *State v. Schaim*, 65 Ohio St.3d 51, 61 fn. 9 (1992). "Furthermore, debatable trial tactics do not constitute ineffective assistance of trial counsel." *Id*., citing *State v. Clayton*, 62 Ohio St.2d 45, 49 (1980); *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 146.

{¶33} Additionally, there is nothing in the record that suggests D.I. was an accomplice of Mr. Soto in the crimes that Mr. Soto was indicted for in this case. R.C. 2923.03(D) mandates the trial court instructs the jury when an accomplice of a defendant testifies against the defendant. There is nothing in the record that suggests D.I. was an accomplice to the crimes Mr. Soto was charged with, but, rather, the record reflects that D.I. was the victim of a felonious assault when Mr. Soto shot him. There is no deficient performance where counsel does not request a jury instruction that the trial court was not required to give.

Plain Error

**{¶34}** Mr. Soto also argues in this assignment of error that it was plain error for the trial court not to give the jury the accomplice instruction as required by R.C. 2923.03(D). "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). However, "error * * * [is] the starting point for a plain error inquiry[.]" *See Akron v. Calhoun*, 9th Dist. Summit No. 30472, 2023-Ohio-4840, ¶ 26, citing *State v. Terry*, 9th Dist. Summit No. 30137, 2023-Ohio-2234, ¶ 33, citing *State v. Gibson*, 9th Dist. Summit No. 30078, 2022-Ohio-1653, ¶ 15, quoting *State v. Hill*, 92 Ohio St.3d 191, 200 (2001) and citing Crim.R. 52(B).

**{¶35}** As stated above, there is nothing in the record that indicates D.I. was an alleged accomplice of Mr. Soto in the shooting of J.B. In fact, both D.I., and Mr. Soto himself, testified that D.I. was a victim of Mr. Soto's. D.I. testified that Mr. Soto shot him. Mr. Soto testified that he shot D.I. Therefore, it was not plain error for the trial court to not give the accomplice instruction because D.I. was not an accomplice in his own shooting.

**{¶36}** Mr. Soto's third assignment of error is overruled.

**ASSIGNMENT OF ERROR IV**

**THE JURY VERDICT FORM IN COUNT FOUR WAS NOT SUFFICIENT TO CONVICT [MR.] SOTO OF FELONY MURDER.**

**{¶37}** In his fourth assignment of error, Mr. Soto argues the jury verdict form was insufficient because the State was required to prove the predicate felony was not voluntary or involuntary manslaughter, an argument that Mr. Soto made in his first assignment of error. In light of our resolution of the first assignment of error related to whether the State was required to prove the predicate felony was not voluntary or involuntary manslaughter, this assignment of error has been rendered moot and we decline to address it. *See* App.R. 12(A)(1)(c).

{¶38} Mr. Soto's fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR V

**THE STATE OF OHIO VIOLATED SEVERAL ETHICAL DUTIES IN PROSECUTING THIS CASE AMOUNTING TO PROSECUTORIAL MISCONDUCT, DENIAL OF DUE PROCESS OF LAW, AND BRADY VIOLATIONS**.

{¶39} In his fifth assignment of error, Mr. Soto argues that the State violated his due process rights and committed prosecutorial misconduct by "failing to obtain evidence" in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and by "eliciting improper in-court identification" of Mr. Soto by D.I. For the following reasons, we disagree.

Alleged *Brady* Violation

{¶40} In *Brady*, the United States Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady* at 87; *see also State v. Treesh*, 90 Ohio St.3d 460, 475 (2001). "There are three components of a true *Brady* violation: [1] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the State, either willfully or inadvertently, and [3] prejudice must have ensued." *State v. Brantley*, 9th Dist. Summit No. 29924, 2021-Ohio-4621, ¶ 7, quoting *Strickler v. Greene*, 527 U.S. 263, 281-282 (1999).

{¶41} As this Court previously stated in *Brantley* at ¶ 9:

The *Brady* rule "arguably applies in three quite different situations." *United States v. Agurs*, 427 U.S. 97, 103 (1976). The first situation, as exemplified by [*Giglio v. U.S.*, 405 U.S. 150 (1972)], is where the prosecution relied on false testimony and it either knew or should have known that the testimony was false. *Agurs* at 103. In these cases, "a strict standard of materiality [is required], not just because they involve prosecutorial misconduct, but more importantly because they involve a corruption of the truth-seeking function of the trial process." *Id.* at 104.

Accordingly, the use of false testimony "must be set aside if there is any reasonable likelihood that the testimony could have affected the judgment of the jury." *Id*. at 103. The second situation where the *Brady* rule is applicable is when the prosecution defies a pretrial request for specific evidence. *Id*. at 104. The third situation is where the prosecution refuses to disclose evidence favorable to the accused when there is only a general request for exculpatory evidence or no request is made. *Id*. at 107. With respect to the second and third situations, the evidence is considered material for the purposes of *Brady* "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id*.

**{¶42}** On appeal, Mr. Soto argues:

The State did not disclose [Mr.] Soto's self-defense claim or request evidence from the lead detective; such information was never sought or collected. The detective, despite knowing everything D.I. said was a lie, completely failed to investigate D.I.'s involvement even with knowledge D.I. participated in the drug transaction. He failed to: collect D.I.'s standard DNA sample or test for gunshot residue; request processing of essential items for his DNA * * * ; did not generate a report of what was found in D.I.'s phone; and further failed to investigate D.I.'s home for evidence in spite of learning that D.I. left the scene with J.B. dead in his vehicle, drove to the area of his home, and then called 911 while driving back to the scene.

Here, Mr. Soto does not allege one of the three situations where the *Brady* rule would apply. Thus, Mr. Soto's argument with respect to the *Brady* violation is overruled.

<u>Alleged Improper Identification</u>

**{¶43}** Mr. Soto also argues "[t]he prosecution committed prejudicial misconduct when it obtained its only identification of [Mr.] Soto in its case-in-chief by leading D.I." However, the record shows that Mr. Soto did not object to this alleged misconduct at trial. The failure "to object to the prosecutor's alleged misconduct at trial * * * forfeit[s] all but plain error*" State v. Whitaker*, 169 Ohio St.3d 647, 2022-Ohio-2840, ¶ 85. Mr. Soto has not argued plain error and we will not create a plain error argument on his behalf. *See State v. Cross*, 9th Dist. Summit No. 25487, 2011-Ohio-3250, ¶ 41; *See also State v. Hairston*, 9th Dist. Lorain No. 05CA008768, 2006-Ohio-4925, ¶ 11.

**{¶44}** Mr. Soto's fifth assignment of error is overruled.

## ASSIGNMENT OF ERROR VI

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN CALLING D.I. AS [A] COURT WITNESS AND GRANTING [HIM] IMMUNITY.**

**{¶45}** In his sixth assignment of error, Mr. Soto argues the trial court abused its discretion in calling D.I. as a court witness and granting him immunity. For the following reasons, we disagree.

### Calling D.I. as a Court Witness

**{¶46}** Mr. Soto argues the trial court erred when it called D.I. as a witness of the court, allowing the State to question D.I. as if he was under cross-examination. As this Court said in *State v. Walter*, 9th Dist. Wayne No. 20AP0020, 2022-Ohio-1982, ¶ 42-43:

> Evidence Rule 614(A) provides that the court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called. The decision as to whether to call a witness on its own motion pursuant to Evid.R. 614(A) is within the discretion of the trial court, and will be reversed only for an abuse of such discretion. An abuse of discretion means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling.
>
> * * * Additionally, "[i]t is well-established that a trial court does not abuse its discretion in calling a witness as a court's witness when the witness's testimony would be beneficial to ascertaining the truth of the matter and there is some indication that the witness's trial testimony will contradict a prior statement made to police.

(Internal quotations and citations omitted.)

**{¶47}** Here, in accordance with Evid.R. 614(A), the State filed a written motion asking the trial court to call D.I. as the court's witness. That motion stated:

> In the case at the bar, the State of Ohio has conversed with [D.I.] and is unsure if he will appear at trial. In addition, the State does not know what [D.I.] will testify to if he does appear, as [D.I.] has provided inconsistent statements. [D.I.]'s statements make the State unable to vouch for his credibility. The State asserts that calling [D.I.] as a [c]ourt's witness is the best manner in which to elicit the truth

related to the charges. Thus, the State respectfully moves this [h]onorable [c]ourt for an order to call [D.I.] as a witness by the [c]ourt.

As D.I. was both a victim of the shooting and present when his brother was shot, his testimony was beneficial to ascertaining the truth of the events that happened that day.  In the written motion, the State indicated D.I. had provided prior inconsistent statements, and the State was unsure as to what D.I. would testify to at trial.   Therefore, the trial court did not abuse its discretion in calling D.I. as the court's witness.

<u>Granting D.I. Immunity</u>

{¶48}  Mr. Soto also argues in this assignment of error that the trial court erred in granting immunity to D.I., because such grant of immunity did "not further[] the administration of justice."

{¶49}  R.C. 2945.44 states:

(A) In any criminal proceeding in this state or in any criminal or civil proceeding brought pursuant to Chapter 2981. of the Revised Code, if a witness refuses to answer or produce information on the basis of the witness's privilege against self-incrimination, the court of common pleas of the county in which the proceeding is being held, unless it finds that to do so would not further the administration of justice, shall compel the witness to answer or produce the information, if both of the following apply:

(1) The prosecuting attorney of the county in which the proceedings are being held makes a written request to the court of common pleas to order the witness to answer or produce the information, notwithstanding the witness's claim of privilege;

(2) The court of common pleas informs the witness that by answering, or producing the information the witness will receive immunity under division (B) of this section.

(B) If, but for this section, the witness would have been privileged to withhold an answer or any information given in any criminal proceeding, and the witness complies with an order under division (A) of this section compelling the witness to give an answer or produce any information, the witness shall not be prosecuted or subjected to any criminal penalty in the courts of this state for or on account of any transaction or matter concerning which, in compliance with the order, the witness gave an answer or produced any information.

"The mandate of the statute is clear: immunity may not be granted unless (1) the witness refuses to answer on the basis of his privilege against self-incrimination, (2) the prosecuting attorney makes a written request to order the witness to answer, and (3) the court informs the witness he will receive transactional immunity." *State ex rel. Koren v. Grogan*, 68 Ohio St.3d 590, 592 (1994).

{¶50} Here, the record reflects the trial court, after making the decision to call D.I. as a court's witness, appointed counsel to consult with D.I. before he testified. After meeting with D.I., his counsel informed the trial court and the parties that D.I. planned to invoke his Fifth Amendment right against self-incrimination. The record reflects that counsel for D.I. informed the trial court that D.I. was refusing to testify on the basis of his privilege for self-incrimination. The record also indicates the State filed a written motion seeking immunity for D.I. pursuant to R.C. 2945.44. The record further indicates the trial court informed D.I. that he would receive the following immunity for his testimony:

> D.I. is granted immunity pursuant to [R.C.] 2945.44, in that he shall not be prosecuted or subjected to any criminal penalty in the court of this State for or on account of any transaction or matter concerning the events during the hours between 12:00 pm and 4:00 pm on February 10, 2022 at or near the area of 1084 Yukon Avenue, Akron, Summit County, Ohio, that resulted in the death of [J.B.] and the shooting of [D.I.], as well as for [D.I.]'s actions and involvement in the investigation, including his statements to the police, EMS, and 911 call taker.

{¶51} After reviewing the record, there is no indication that the trial court abused its discretion in granting D.I. transactional immunity for his testimony in this case.

{¶52} Mr. Soto's sixth assignment of error is overruled.

III.

{¶53} Mr. Soto's six assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT

STEVENSON, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

ERIC M. LEVY, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.